206 A.2d 635.

JAMES F. FITZGERALD *et al. vs.* THE BOARD OF REVIEW OF THE CITY OF NEWPORT.

FEBRUARY 4, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This petition for certiorari was brought to review the action of the zoning board granting an application for an exception to the zoning ordinance and permitting the applicants to erect sixteen apartment houses containing one hundred and fifty dwelling units on a tract of land presently zoned R-10. The petitioners are neighboring property owners. Pursuant to the writ the respondent board certified the pertinent records to this court.

It appears that the particular area in question is located at the corner of Bateman and Carroll avenues in a neighborhood where although single-family residences predominate, two-family dwellings and other limited uses are permitted. The applicants' tract of land contains 9.155 acres and situated thereon are an old stone residence and a frame structure once used as a stable. Both buildings are in a state of disrepair.

After an extensive hearing at which testimony was received from real estate experts, city officials and various remonstrants, the board granted the application but limited the number of family units to 150 rather than the 194 for which permission had been requested.

At the outset we consider petitioners' two motions to dismiss the application which were filed at the commencement of the hearing before the board and at the completion of the testimony were denied. They challenge on three separate grounds the jurisdiction of the board to entertain the application.

The first ground is that a prior submission to the planning board created for the city by P. L. 1940, chap. 847, is required whenever a proposed development contemplates the laying out and construction of private roads. The petitioners point to no provision of chap. 847 which lends any support to that argument nor have we been able to find any. That act is principally concerned with the adoption of a master plan for the city and with procedures for obtaining approval for subdivisions of property "into house lots for sale or occupancy" . . . It has no application here.

A second ground is that it would be "spot zoning" to permit the introduction of multi-unit dwellings into a predominantly single-family residential area. This attack is not directed at legislative "spot zoning" as was the case in *Hadley* v. *Harold Realty Co.,* 97 R. I. 403, 198 A.2d 149, and in *D'Angelo* v. *Knights of Columbus Bldg. Ass'n,* 89 R. I. 76, but instead goes to an alleged illegal "spot zoning" by the board. There are instances where such an attack might have merit, but this is not one of them.

In *Harrison* v. *Zoning Board of Review,* 74 R. I. 135, this court held that there was wide opportunity for "spot zoning" under an ordinance which authorized a zoning board to grant an exception in circumstances where the requested use was deemed to be in harmony with the character of the neighborhood and appropriate to the district. In that case, however, neither the validity of the questioned portion of the ordinance nor the authority of the board to act thereunder was before the court. Two years later, however, in *Flynn* v. *Zoning Board of Review,* 77 R. I. 118, the jurisdiction of the zoning board to consider an application for

an exception under the same ordinance provision was challenged on the ground that the almost unlimited discretion vested in the board constituted a power to "spot zone" and the court held that the provision was invalid.

In the instant case, however, our concern is with ordinance provisions substantially different from those considered in *Flynn* and *Harrison*. In those cases, the ordinance vested in the zoning board the same complete power which under the enabling legislation, now G. L. 1956, §45-24-13, had been conferred upon the city council. Here, however, secs. 78-7 and 78-12(B)(3)(a) and (b) of the ordinance enumerate the uses which may be authorized as special exceptions in an R-10 district, and in sec. 78-12(C)(3) the rules limiting the exercise of the board's power to grant an exception are detailed. Under this ordinance and on this application the board had no power to "spot zone."

The final ground upon which the motions are predicated is that the applicants' lot being in area something less than 200,000 square feet did not meet the minimum area requirements prescribed by sec. 78-9 of the ordinance. It provides that "No building shall be erected, altered or relocated to accommodate or make provision for more than two families for each 10,000 square feet of lot area in the R 10 District * * *." The petitioners construe that section as requiring 5,000 square feet of lot area for each of the 194 family units sought in the application as filed or a minimum lot area of 970,000 square feet. We cannot agree with that construction. As we read sec. 78-9 the minimum area restriction applies to a building rather than to the number of family units, and prohibits the erection or alteration of the specified kind of building unless the lot size requirement is met. *Carey* v. *Cassidy*, 81 R. I. 411, upon which petitioners rely, does not suggest a contrary conclusion. There we held that a structure on a lot having less than the then required area could not be converted to a multi-family dwelling unit. That decision is consistent with the conclusion

we reach here. We find nothing in sec. 78-9 which barred consideration of the application.

The petitioners next contend that there is no legally competent evidence upon which the board could have rested its findings that the proposed use "would not tend to depreciate the value of property in the neighborhood or be otherwise detrimental to the neighborhood or its residents or alter the neighborhood's essential characteristics."

To sustain that position, petitioners are burdened with establishing that there is no competent legal evidence in the record upon which the disputed findings can rest. *Dawson* v. *Zoning Board of Review*, 97 R. I. 299, 197 A.2d 284; *Laudati* v. *Zoning Board of Review*, 91 R. I. 116. While they point to testimony of witnesses presented by them which would negative these findings, they ignore the positive testimony of a real estate agent and a city official to the contrary. In such circumstances they have failed to sustain their burden and the findings must stand.

We turn now to petitioners' final contention that the decision should be quashed because the board failed to find that the proposed use will promote the public convenience and welfare.

The rules and standards governing the exercise of a board's authority to grant exceptions are to be found in the controlling ordinance. The rules and standards which are there set out are conditions precedent to an exercise by the board of its authority to act affirmatively on an application for an exception. *Kraemer* v. *Zoning Board of Review*, 98 R. I. 328, 201 A.2d 643.

The controlling section is 78-12(C)(3) which in addition to prescribing specific conditions precedent upon which the issue of a permit for a special exception must rest, also provides that all the board's determinations shall be made "in harmony with the purpose and intent * * * of this ordinance as expressed in Section 1 thereof." That "purpose and intent" is defined in sec. 78-1 as being "For the purpose of

promoting the public health, safety, comfort, convenience and general welfare * * *." It follows that the board is without authority to grant an exception unless the proposed use meets those purposes and intents. The applicants recognize that requirement by alleging in their application that the exception sought will "serve substantially public convenience and welfare * * *."

The board's failure in this instance to make a finding as to the existence of these conditions precedent is not necessarily fatal. While it should have disclosed all the grounds upon which it based its decision, we will, so long as it acted affirmatively, ignore that infirmity in its decision and examine the record in order to ascertain whether it contains any evidence which would warrant the making of such a finding. *Cugini* v. *Chiaradio*, 96 R. I. 120, 189 A.2d 798; *Durfee* v. *Zoning Board of Review*, 94 R. I. 316, 180 A.2d 452; *Bastedo* v. *Board of Review*, 89 R. I. 420.

From our inspection of the record, we are satisfied that it contains legally competent evidence from which the board could, as it did, conclude that the proposed use will neither create nor aggravate traffic or fire hazards or interfere with the city pattern of circulation, and that it will not depreciate the value of or be otherwise detrimental to neighboring property or its residents or alter its essential characteristics. Moreover, the evidence is uncontradicted that there is a need for additional housing in the city which in part will be fulfilled by the proposed development. In ordinary circumstances that evidence in its totality would, under sec. 78-12(C)(3), support a finding by the board that the exception if granted would promote the public convenience and welfare.

Here, however, petitioners contend that the exception if permitted will overtax the neighborhood's sanitation and storm water drainage systems. If the record supports that contention there is a serious question as to whether the public convenience and welfare will be served. The only

substantial testimony on the subject came from the city director of sanitation and it negates petitioners' contention. In addition, a letter written by him is in the evidence as an exhibit. There he discusses the proposed development and its relation to the existing systems, makes recommendations as to what should be done in order to avoid unduly taxing their capacities, and concludes with the statement "If this method is followed I see no reason why any of the named areas would be affected." On the evidence, as we have referred to it, the board could have found that the public convenience and welfare would be promoted by a grant of the exception sought. In the circumstances, its failure to do so specifically is not fatal.

The board moreover recognized the possibility that the existing sanitation and storm water drainage systems might be overtaxed unless its grant was conditioned upon the applicants adopting preventive measures. To that end, in its decision it provided that "The recommendations of the Director of the Newport Department of Sanitation introduced during the hearing shall be strictly adhered to with respect to sanitary and storm water drainage from the premises." We are not satisfied that the conditions and safeguards so imposed are sufficiently definite since there is left open to question what those "recommendations" are. The board should have been more explicit in fixing with particularity what recommendations should be adhered to in order to insure that the neighboring area would not be adversely affected by the increased demands which the proposed development would place on the existing systems. Because of this indefiniteness, we are constrained to remand solely for the purpose of allowing the board to include with definiteness in its decision as provided in sec. 78-12(C)(5) "such further conditions" with respect to the sanitary and storm water drainage systems "as are deemed necessary for the protection of neighboring properties and the public interest."

The petition for certiorari is granted, the records certified to this court are ordered returned to the board, and it is hereby directed to amend its decision in accordance with this opinion. There is reserved to the board the right to hear further evidence if it so desires, and jurisdiction for review of its subsequent decision is retained in this court.

*Phelan, Sullivan & Burke,* for petitioners.

*James S. O'Brien,* City Solicitor, *Alexander G. Teitz,* Associate Counsel, for respondent.