308 A.2d 503.

ELIZABETH B. GUIBERSON *et al. vs.* ROMAN CATHOLIC BISHOP OF PROVIDENCE *et al.*

AUGUST 17, 1973.

PRESENT: Roberts, C. J., Paolino. Kelleher and Doris, JJ.

PAOLINO, J. This is a petition for certiorari to review a decision of the Superior Court for the county of Newport in two consolidated civil actions brought by the petitioners against the respondents. We issued the writ and pursuant thereto the pertinent records have been certified to this court.

On June 30, 1971, the Roman Catholic Bishop of Providence and James Estate Trust, hereinafter sometimes referred to as "the owner" and "the developer" respectively, filed two petitions with the Zoning Board of Review of the City of Newport for large scale developments under sec. 78-11(a) of the zoning ordinance of that city. They sought special exceptions to construct a large scale residential condominium development on a 70-acre tract comprising the greater part of lot 24 on tax assessor's plat 43, and the greater part of lot 34 on tax assessor's plat 43, and the greater part of lot 4 on assessor's plat 41. The first petition sought approval of a maximum of 175 clustered residential units on lot 24 and the second sought approval of a maximum of 125 such units on lots 4 and 34.

The petitioners here are owners of property adjoining or in close proximity to the proposed development. The respondents are the owners and developers, and members

of the Newport Zoning Board of Review to whom we shall hereinafter refer to as the "board."

The board held hearings on the petitions and on August 11, 1971, filed a written decision which contains specific findings of fact. It found that the proposed development would not create or aggravate a traffic or fire hazard. It based this finding upon the fact that the proposed development is located in a sparsely populated residential area, that ample arrangements had been made as shown by the plans filed for parking and traffic ingress and egress and by the testimony of petitioners' traffic engineer. Accordingly, it concluded that the proposed development would not block or hamper the city's pattern of circulation.

The board further found that the proposed development would not be detrimental to the neighborhood or its residents, or alter the neighborhood's essential characteristics. It noted that the property in question is located in the so-called estate area of the city and that the proposed buildings would be so placed, as shown by the plat and by the testimony, that they would not intrude on any neighbor's property. It also noted that the proposed cost of the units and the manner of construction clearly demonstrated that there would be no inferior workmanship or inexpensive units in the proposed development. It concluded from the testimony of the real estate experts that large scale developments in that area were a proper use and that a special exception under the ordinance would not depreciate the value of property in the neighborhood.

On the basis of such findings the board granted the two petitions subject to the following conditions. In granting the first petition it limited the number of units to 150. It conditioned the approval of both petitions on the construction of one, two and three-bedroom units only, and expressly refused approval for any four-bedroom units. It reserved the right to examine the construction plans before

the issuance of any building permit by the building inspector. The fourth condition reads as follows:

"(4) The petitions as filed and approved apply to the Roman Catholic Bishop of Providence as owner of the land and the James Estate Trust as proposed purchasers of the land, or a limited partnership in which Snelling R. Brainard or an affiliated organization controlled by him is a general partner, and development of the proposed large scale special exception is to be carried through by Living Enterprises Corporation. The Board, due to the amount of money involved and the area where the proposed development is to be located, reserves the right to approve the transfer of the right to construct the large scale developments to any other person, firm or corporation other than those previously mentioned; provided, however, that nothing herein contained shall prevent an institutional lender that is financing construction of the proposed development from completing the construction in accordance with construction plans approved by the Board, in the event of a foreclosure."

On August 28, 1971, petitioners appealed to the Superior Court from the decision of the board by filing a complaint in that court in each case, in accordance with the provisions of G. L. 1956 (1970 Reenactment) §45-24-20. The Superior Court granted respondents' motion to consolidate petitioners' appeals.

The Superior Court also denied petitioners' motion under §45-24-20 for leave to present additional evidence before the board relating to the inadequacy of the Newport sewage system to handle the proposed method of sewage disposal and the resultant discharge of untreated and undertreated sewage into Newport Harbor. This motion was denied without prejudice, however, to petitioners' right to present such additional evidence in open court at the trial of this action.

The petitioners thereafter filed a further motion for leave to present in open court additional evidence concerning

the effect of the proposed development on the Newport sewer system and the pollution of Newport Harbor. This motion was heard in part by the Superior Court on March 2, 1972, and continued nisi until the commencement of trial. The trial began on May 1, 1972, before a justice of the Superior Court sitting without a jury. The petitioners renewed their motion for leave to present additional evidence. The respondents objected and the trial justice reserved decision on the motion, but agreed to permit the additional evidence to be presented *de bene,* subject to be stricken upon the trial justice's later determination as to relevancy.

The petitioners then presented the testimony of Mr. Papken Janjigian, the Newport City engineer. In addition they introduced various exhibits for the purpose of showing Newport's current sewer and sewage difficulties. The respondents presented the testimony of Mr. Ronald Ash, a civil engineer.

On September 26, 1972, the trial justice filed a written decision. After discussing the travel of the case and after reviewing the pertinent evidence and the conflicting views of the parties, he made express findings of fact on the basis of which he affirmed the decision of the board in each of the two cases before him. On the view we take we need only refer to his finding that the adequacy of Newport's sewage disposal system was not before the court.

The petitioners' first assignment of error is that the Superior Court erred in rejecting and excluding petitioners' uncontradicted evidence regarding the effect of the proposed development on the Newport sewer system in determining whether the special exception, if granted, would promote the public health, safety, comfort, convenience and general welfare.

At the hearing before the board, petitioners attempted to show that the sewage to be generated by the proposed

development would cause a great increase in the overtaxing of an already inadequate sanitation and storm water drainage system, resulting in a significant increase in the amount of raw and undertreated sewage flowing into Newport Harbor. The board sustained the objection of the developer and refused to permit this evidence, apparently on the ground that the sewage problem was none of its business and that it was up to the city, through its department of sanitation, to insure and approve adequate sewage arrangements after the exception had been granted.

As we stated above, the trial justice admitted this evidence *de bene* but, in his decision he expressly rejected and excluded it as immaterial. He held that the effect of the proposed development on the Newport sewer system and the pollution of Newport Harbor were not proper subjects for the board or the Superior Court to consider in determining whether the special exception requested, if granted, would promote the public health, safety, comfort, convenience and general welfare.

The petitioners argue that the board was wholly without power to grant the special exception in question without finding as a condition precedent thereto that the effect of the proposed development on the Newport sewer system would not be contrary to the public health, safety, comfort, convenience and general welfare. They rely to a great extent upon certain language appearing in our opinion in *Fitzgerald v. Board of Review*, 99 R. I. 221, 206 A.2d 635 (1965). One of the contentions made by the petitioners in that case was that the exception sought by the applicants would overtax the neighborhood's sanitation and storm water drainage systems. We answered that contention by saying:

> "If the record supports that contention there is a serious question as to whether the public convenience and welfare will be served." *Id.* at 226, 206 A.2d at 638.

The petitioners argue in substance that the quoted language from the *Fitzgerald* case is controlling here. The respondents, on the other hand, argue that *Fitzgerald* is clearly distinguishable factually from the case at bar and therefore not applicable. On the view we take it is not necessary to decide whether our language in *Fitzgerald* applies here or whether *Fitzgerald* has been overruled by legislation enacted subsequent to our decision in that case.

We agree with petitioners' argument that the board and the Superior Court erred in failing to consider evidence about the sewage problem and in failing to make a finding with respect to the effect of the proposed development on the Newport sewer system. *Hester* v. *Timothy,* 108 R. I. 376, 275 A.2d 637 (1971).

The rules and standards governing the exercise of a board's authority to grant special exceptions are to be found in the controlling ordinance. Those rules and standards are conditions precedent to an exercise by the board of its authority to act affirmatively on an application for an exception. *Thomson Methodist Church* v. *Zoning Board of Review,* 99 R. I. 675, 679, 210 A.2d 138, 141 (1965).

The controlling ordinance here is sec. 78-12(c)(3), which provides as follows:

"All determinations of the board shall be made in accordance with the comprehensive plan specified in Title 45-24-3 of the General Laws of 1956 and in harmony with the purpose and intent of said law and of this ordinance as expressed in section 1 thereof.

"In addition to this general rule of guidance and to the particular requirements specified in this ordinance, no permit for a special exception shall be issued unless the board finds that the proposed building or the proposed use of land:

(A) will not create or aggravate a traffic or fire hazard;

(B) will not block or hamper the city pattern of circulation;

(C) will not tend to depreciate the value of property in the neighborhood or be otherwise detrimental to the neighborhood or its residents or alter the neighborhood's essential characteristics."

Section 78-1(b) defines purpose and intent generally as "promoting the public health, safety, comfort, convenience and general welfare." Such purpose and intent, as defined in §45-24-3 includes promotion of the "public health and the general welfare" and, specifically, the facilitation of "adequate provision of * * * water, sewerage * * * and other public requirements."

The above are the conditions precedent which must be met before the board's authority to grant a special exception comes into being. *Hopf* v. *Board of Review,* 102 R. I. 275, 285, 230 A.2d 420, 426 (1967). The board made findings with respect to the requirements set forth in sec. 78-12(c)(3) (A), (B) and (C) of the ordinance but it made no finding with respect to the sewerage problem. The board is without authority to grant an exception unless the proposed use meets the intents and purposes set forth in sec. 78-1 of the ordinance and §45-24-3 of our state enabling act. *Fitzgerald* v. *Board of Review, supra,* at 226, 206 A.2d at 638. To facilitate the adequate provision of sewerage is, as we have pointed out above, one of the purposes set out in §45-24-3 and is related to "promoting the public health, safety, comfort, convenience and general welfare * * *." It follows that evidence relating to the effect of the proposed development on the Newport sewer system is relevant to the question of whether the exception sought is reasonably necessary for the convenience and welfare of the public. As this court said in *Hester* v. *Timothy, supra* at 385-86, 275 A.2d at 641-42:

"* * * the grant of a special exception is preconditioned upon a showing that the exception sought is reasonably necessary for the convenience and welfare of the public and to satisfy such a standard an

applicant is required to show by competent evidence that neither the proposed use *nor its location on the site* would have a detrimental effect upon public health, safety, welfare and morals."

The failure of the board to admit evidence of the effect of the proposed development on the Newport sewer system and the failure of the Superior Court to consider such evidence in determining whether the special exception, if granted, would promote the public welfare and convenience was error. The board was without power to grant the special exception requested without finding as a condition precedent thereto that the effect of the proposed development on the Newport sewer system would not be contrary to the public health, safety, comfort, convenience and general welfare.

In the circumstances we believe the records should be returned to the Superior Court with directions that that court grant petitioners' motion under §45-24-20 to present additional evidence before the board relating to the question of the effect of the proposed development on the Newport sewer system and for a finding by the board on that question. *See Hester* v. *Timothy, supra.*

Although, in view of our conclusion, we need not discuss the petitioners' remaining contentions, we feel it is appropriate to point out that the final paragraph in the board's decision appears to restrict the application of the special exception to the owner and developer and does not run with the land. If this is what the board intended, it would constitute a personal license or privilege to specific persons in apparent conflict with the decision of this court in *Olevson* v. *Zoning Board of Review,* 71 R. I. 303, 44 A.2d 720 (1945). Although we do not reach, and therefore do not decide, this question at this time, we believe it is appropriate to mention it here so that the board may have the opportunity of clarifying this portion of its decision if it deems it appropriate to do so.

The petition for certiorari is granted, the records certified to this court are ordered returned to the Superior Court with direction that both petitions be returned to the Newport Zoning Board of Review for further proceedings in accordance with this opinion.

Mr. Justice Joslin did not participate.

*Corcoran, Peckham & Hayes, Edward B. Corcoran; Edwards & Angell, John H. Blish; Ralph D. Morrison; Matthew J. Faerber,* for petitioners.

*Sheffield & Harvey, Richard B. Sheffield, Brian G. Bardorf; Moore, Virgadamo, Boyle & Lynch, Jeremiah C. Lynch, Jr.; James S. O'Brien,* City Solicitor, for respondents.