**Earl HICKS**

v.

**ZONING BOARD OF REVIEW OF the CITY OF WARWICK et al.**

No. 85–488–M.P.

Supreme Court of Rhode Island.

July 2, 1987.

Barry J. Kusinitz, Temkin & Miller, Ltd., Providence, for appellants.

Charles Butterfield, Jr., Paul Finstein, Warwick, for respondent.

OPINION

SHEA, Justice.

In this case the Superior Court reversed a decision of the Zoning Board of Review of the City of Warwick. The matter is before this court pursuant to our issuance of a writ of certiorari to review the action of the Superior Court. We reverse.

James B. King, Jr. (King), owns real estate numbered as 71 Brook Street in the city of Warwick, further identified as lot No. 148, assessors plat No. 249. A single-family home used by King's son occupies that lot together with an unattached garage. King himself resides at 7 Young Orchard Avenue in Warwick, which abuts the 71 Brook Street premises. The Brook Street property is on the west side of Brook Street and is zoned Residence A–7, which provides for detached single-family dwelling units. The west side of Brook

and the adjoining areas, including Young Orchard Avenue and Lansing Avenue, consist of single-family dwellings, and the entire area is classified Residence A–7. The lots on the east side of Brook Street are zoned Heavy Commercial and are used for commercial purposes. These lots front on Warwick Avenue and are separated from the west side of Brook Street by the street itself and by a wooden stockade fence installed pursuant to § 6.4.2 of the Warwick zoning ordinance in order "to conceal such areas or facilities from 'Residence Districts.'"

King filed an application for an exception or variance under the Warwick zoning ordinance, seeking permission from the zoning board (the board) to use the Brook Street premises for the purpose of automobile repairs, which use was commercial in nature. Brake jobs and tuneups were the kinds of auto repair work he proposed to do. At the time of his application and to date there are no other permitted commercial uses within the immediate area zoned Residence A–7.

At the hearing before the board, King testified that he had been doing the same kind of automobile repair work at his residence garage at 7 Young Orchard Avenue for five years without zoning approval and that he wanted to move the operation next door to the Brook Street property. He said he wanted to work near his home because his wife was ill and might need care. No evidence was introduced to substantiate her illness except for some reference to arthritis. King presented testimony from a real estate expert who said that the granting of the petition would not depreciate surrounding property values.

Another real estate expert, testifying for the remonstrant Earl Hicks said that the proposed use would devastate surrounding property values. He noted that the area zoned Heavy Commercial that was across Brook Street from the subject property was screened off from the residential area by a high fence as required by the ordinance.

The respondent, Hicks, testified that he lived directly across the street from King at 12 Young Orchard Avenue. He said

that King's business volume at his home had recently increased. He questioned the seriousness of Mrs. King's medical problem and stated that he sees her drive her car almost every day.

The board granted the petition subject to several restrictions concerning the manner in which the business could be operated. On appeal, the Superior Court found that the board had incorrectly applied the standard for a special exception instead of the standard for a variance. The discretionary power to grant exceptions is intended to provide a necessary flexibility in exceptional cases in order to provide relief from arbitrary results of a literal enforcement of terms of a zoning ordinance. *Flynn v. Zoning Board of Review of Pawtucket*, 77 R.I. 118, 124, 73 A.2d 808, 811 (1950). Exceptions are granted when convenience and welfare will be substantially served or an appropriate use of neighboring property will not be substantially injured. *Lough v. Zoning Board of Review of North Providence*, 74 R.I. 366, 369, 60 A.2d 839, 840 (1948). A variance is granted, however, only upon a showing of hardship. *Harrison v. Zoning Board of Review of Pawtucket*, 74 R.I. 135, 139–40, 59 A.2d 361, 363 (1948); *Heffernan v. Zoning Board of Review of Cranston*, 49 R.I. 283, 287, 142 A. 479, 480 (1928). The Superior Court held that since there was no evidence of unnecessary hardship, the board's decision must be reversed. We find that in so holding, the trial justice was in error.

Section 14.2.3 of the Warwick zoning ordinance provides that "[i]n appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance where the exception is reasonably necessary for the convenience and welfare of the public." In *Center Realty Corp. v. Zoning Board of Review of Warwick*, 96 R.I. 76, 189 A.2d 347 (1963), this court held that by the enactment of that particular provision of the ordinance, the Warwick City Council had conferred upon the board a portion of its own "power to provide for special exceptions to the terms of the ordinance that had

been delegated to the city council under the provisions of the enabling act, G.L. 1956, § 45–24–13," and had thus conferred "a broad grant of power on the board to make exceptions to *any provision* of the ordinance when necessary to the public convenience and welfare." (Emphasis added.) 96 R.I. at 78, 189 A.2d at 349. Later, in *Kraemer v. Zoning Board of Review of Warwick*, 100 R.I. 20, 22, 210 A.2d 650, 651 (1965), the court held that "despite the broad latitude of authority granted therein * * * [the public convenience and welfare language of § 14.2.3 of the ordinance] in effect, constituted a limitation upon the authority of the board to act affirmatively on any application for an exception thereunder."

More recently this court again rejected a challenge to the board's authority to grant exceptions under § 14.2.3. In *Dean v. Zoning Board of Review of Warwick*, 120 R.I. 825, 390 A.2d 382 (1978), the court held that the language " 'reasonably necessary for the convenience and welfare of the public' " prevented an unlawful delegation to the board. The court again held that this language constituted "a sufficient limitation upon the authority of the board to act affirmatively on an application for an exception." *Id.* at 829, 390 A.2d at 385.

Therefore, it is well established under *Center Realty*, *Kraemer*, and *Dean* that the board has the power to grant special exceptions from any provision of the ordinance. Our review is consequently limited to the question of whether any evidence exists in the record to support the action of the board.

In his decision the trial justice observed that King has "espoused a valid reason for wanting to conduct his business in close proximity to his home." But the trial justice erroneously believed that petitioner was required, but failed, to prove that an unnecessary hardship would result from a denial of his petition. That error arose from his belief that petitioner was seeking a variance that would require proof of unnecessary hardship.

However, under the particular and somewhat unique § 14.2.3 of the Warwick ordinance, the relief sought by the petitioner was that of a special exception. The trial justice was of the opinion that a valid reason for that exception had been established. He appears to have adopted the board's acceptance of the evidence that it was necessary for the petitioner to develop his business in the garage adjacent to his residence because to do so would allow him to support himself, his wife, and two children and permit him to care for his wife in emergency situations. The board made additional findings that the proposed use would not be detrimental to surrounding property values, that the front windows of the homes on Brook Street face the rear of heavy-commercial-district uses that line Warwick Avenue in that area, and that the proposed use would not create a traffic hazard in the area. Our review of the record leads us to the conclusion that evidence existed to support these findings.

For these reasons, the petition for certiorari is granted, the judgment of the Superior Court is quashed, and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.