DECISION
Before this Court is the appeal of R.I.S.A.T., Inc. (plaintiff) from an October 16, 1995 decision of the Woonsocket Zoning Board of Review (Board) denying permission to establish a methadone treatment facility in a C-2 zone under the Woonsocket Zoning Ordinance § 4.6(1), Business Services and Offices. Also before the Court is the plaintiff's appeal from the October 27, 1995 decision of the Board which denied the granting of a special permit to establish the same proposed facility under the amended zoning ordinance. Jurisdiction is pursuant to G.L. 1956 (1988 Reenactment) § 45-24-20.
R.I.S.A.T., Inc. is a for-profit corporation desiring to operate a business facility in Woonsocket. More specifically, R.I.S.A.T., Inc. wishes to provide group and individual counseling, employment counseling, patient evaluation and specific medical treatment to individuals who are in the process of drug addiction recovery. Such medical treatment will be limited to the dispensing of the prescription drug methadone during certain hours of the day.
On September 20, 1995, R.I.S.A.T. submitted an application to the zoning officer for Woonsocket, seeking to use a portion of the property at 1625 Diamond Hill Road in that city for the operation of an out-patient medical facility, a methadone clinic. Lorraine Provencher, the Zoning Officer, denied the plaintiffs application, asserting that such a use was not specifically permitted in this zone, C-2, under the ordinance and was, therefore, a "use not mentioned" and not allowed.
R.I.S.A.T. appealed the denial to the Zoning Board of Review on the premise that a methadone treatment center falls within the category Business Services and Offices, which, with certain exceptions not relevant to this matter, is permitted in this zone as a commercial use pursuant to § 4.6 of the zoning ordinance.
At its October 16, 1995 meeting, the Board heard testimony from David Piccoli, the executive director in charge of operations at R.I.S.A.T. . In response to questions concerning the procedure for dispensing medications, Mr. Piccoli testified that "it is dispensed by a nurse who is in a secured room, who observes the patient as they drink the medication." (Minutes of Meeting[1], Woonsocket Zoning Board of Review, October 16, 1995, at 7.) Mr. Piccoli also testified that the dispensed medication is prescribed by a physician and that the organization has a medical director and physicians' assistants as well as nurses and other staff personnel. (Minutes at 8.)
Lorraine Provencher, the Woonsocket Zoning Officer, testified that a doctor's office is considered a business office under the zoning ordinance and that such use does not require a special permit to operate. (sic)(Minutes at 8.) Ms. Provencher distinguished the proposed use from a doctor's office by stating that she felt the proposed business was a rehabilitation facility rather than a business office. (Id.)
The Board voted to sustain the zoning officer's denial of the plaintiff s petition to operate a methadone treatment facility, citing the following reason in the minutes of the meeting and in a letter to the petitioner: "There was an omission of "out patient facilities" in the Zoning Ordinance as evidenced by the City Council's amendment to the ordinance adding "out patient facilities." "(Minutes at 8; Letter from Zoning Board of Review of Woonsocket to plaintiff R.I.S.A.T., October 19, 1995.)
Subsequent to the plaintiffs appeal of the zoning officer's decision, an amendment to the zoning ordinance took effect allowing "out-patient rehabilitation" facilities to operate in areas zoned C-2 provided a special use permit is properly obtained from the Zoning Board. R.I.S.A.T. applied for such special use permit while the appeal of the denial was still before the Board. The plaintiff then appeared before the Zoning Board on October 23, 1995, seeking that special use permit to operate a methadone treatment facility. At that hearing, the Board heard from a number of witnesses who testified on behalf of the plaintiff's petition.
Mary Ann Joachim, Program Director for Discovery House, a treatment facility in Providence operated by the plaintiff organization, described the proposed program as out-patient medical treatment and case management with the ultimate goal being rehabilitation. (Minutes of Zoning Board of Review, hearing the application for Special Use Permit, October 23, 1995, at 2.) Ms. Joachim stated that there is no typical patient at this type of facility and that clients come from all walks of life. (Id.) In response to questions regarding the anticipated numbers of clients to be served at the facility, Ms. Joachim referred to a Harvard study[2], a report from the Woonsocket Substance Abuse Task Force, and statistics from the Department of Health regarding patient enrollment in like programs throughout the state. Ms. Joachim also testified that these studies showed an underserved population in Woonsocket of individuals who need treatment but are unable to access those treatment services. (Id.)
In response to questioning from members of the Board regarding the numbers of clients expected to be served in the proposed facility, Ms. Joachim testified that no study has been done to determine the actual number of clients who would be treated at the Woonsocket site. (Special Permit Minutes at 3.) She also stated that any unexpected increase in numbers of patients would be handled through a needs assessment and a study of the impact such an increase would have on the neighborhood. (Id.) When asked about security at the proposed facility, Ms. Joachim testified that security guards are present at designated dosing times as required by state law. She also responded that there have been no loitering problems at the Providence site and no complaints to the Providence Police regarding that facility. (Special Permit Minutes at 2.)
Ms. Joachim further testified that the proposed business hours for the facility would be from 6:00 a.m. to 8:00 p.m., Monday through Friday. (Id. at 3.) Dosing hours would initially be set between 6:00 a.m. and 9:00 a.m. . Ms. Joachim concluded her testimony in stating that she could not offer any disadvantages to this type of business, that her experience is that the program assists people to recover from addiction and live full lives. (Id. at 4.)
Mr. David Piccoli, Executive Director of the Providence site, testified regarding the projected client base of individuals expected to be served, and the security measures which will be followed by R.I.S.A.T. as required by law. (Special Permit Minutes at 5.)
The Medical Director for R.I.S.A.T., Dr. Alan Wartenburg, a medical doctor with eighteen years of experience in chemical dependency, testified regarding the benefits a treatment facility of this type has on society: "Methadone treatment is quick and safe, it decreases opiate use and sometimes eliminates it, it reduces HIV transmission, it reduces crime, it is less expensive, and it helps people to recover and have useful lives."
(Id. at 6.) He also explained the various university studies done on individuals with chemical dependencies, the results of which indicate a need for more local community treatment programs. (Id.)
Mr. Thomas O. Sweeney, Executive Vice President of Henry W. Cooke Co., and a real estate broker since 1983, testified regarding his observation of the site for the proposed facility. He stated that the building now houses a law firm, a tanning salon, a dentist's office, and a chiropractor's office, and that a kidney dialysis center is located a half-mile down the street. (Special Permit Minutes at 7.) Mr. Sweeney testified that he is familiar with the Woonsocket Zoning Ordinance and that the proposed use is in harmony with the intent of that ordinance and would serve the general population of Woonsocket. He also stated that the proposed use is most similar to a typical medical office use. (Id.)
The Board heard testimony from a number of individuals who opposed the facility. Dr. Raymond Roberge, a dentist who operates an office at the subject site, expressed concern over parking and security. (Id.) Ms. Carol Charette and Mr. Jose Gaspar, Woonsocket residents, expressed concerns regarding community safety. Mr. Michael Caswell, also a Woonsocket resident, testified that there is no agreement in the medical field regarding the effectiveness of methadone treatment. (Id. at 8.) Mr. Lucien Pratt, Chief of the City's Police Reserve unit, testified that he had received many calls from elderly people expressing their concern about walking past a methadone clinic. He also offered that he had read from police reports that ninety percent of methadone patients are classified as petty thieves. (Id.) Commander Michael Richardson of the Woonsocket Police Department stated that he was representing the Department in their opposition to the operation of a methadone clinic. (Id. at 9.) He stated that there is more of a need for treatment of those addicted to other types of drugs. Finally, the Board heard from Ms. Anne Sutherland Auclair of the Woonsocket Substance Abuse Task Force. Ms. Auclair testified that she did not wish to speak for or against the granting of the application but wished to provide statistics and pertinent information. (Id.)
The Board voted to deny the application for a special use permit, citing the following reasons:
 "Reason for Denial: Business is not reasonably necessary to serve the needs and convenience of the general public; insufficient parking on site; would cause an increase of traffic in already congested area; agencies already exist in the City to provide G.E.D. education, substance abuse education; and help to those with mental health and/or substance abuse problems." (Special Use Minutes at 11.)
The plaintiff R.I.S.A.T. was so informed in a letter dated October 25, 1995.
On appeal, the plaintiff first maintains that the proposed facility is not a "use not mentioned" under the zoning ordinance as determined by the zoning officer and the Zoning Board of Review and is, rather, a permitted use under § 4.6(1), Business Services and Offices. On that basis, the plaintiff asks the Court to reverse the denial. In the alternative, the plaintiff argues that the decision of the Zoning Board which denied its application for a special use permit under the amended ordinance must be reversed in light of having satisfied all the statutory requirements for such permit.
STANDARD OF REVIEW
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) 45-24-69 (D) which provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision is supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept to support a conclusion and means more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)(citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25).
USE NOT MENTIONED
The plaintiff first appeals the decision of the zoning board which found the proposed use of the site as a methadone treatment center to be a use not mentioned in the ordinance and therefore not permitted. Plaintiff asserts that the proposed facility falls within the category Business Services and Offices, which, with certain exceptions not relevant to the instant matter, are permitted as a proper use pursuant to § 4.6 of the zoning ordinance.
Evidence does exist on the record which indicates that the zoning authority had simply not anticipated that a facility of this nature would be encompassed under the business services and offices category. The plaintiff points to the dentist, the chiropractor, and the nearby kidney dialysis center, all of which are allowed under that business service designation, as uses akin to what it proposed in the methadone treatment facility. Several distinguishing features serve to highlight the significant differences in these uses however.
The methadone treatment facility expects to see most of its clients at least five days a week, unlike the dentist, the chiropractor, or even the kidney treatment center. Each client is expected to receive a therapeutic dose of the controlled substance methadone under the direction of a nurse and the watchful eye of a security guard, as required by federal law. There is no evidence that any of the medical facilities which currently exist administer a controlled substance to every patient, nor that security is mandated at those facilities. Finally and most significantly, each of the anticipated clients of the methadone treatment facility have actively participated in illegal behaviors in the past, which is how the client base is determined. None of the other facilities appear to have such a client base.
It is also significant to note that the Woonsocket zoning ordinance was amended effective September 29, 1995, just nine days after the plaintiff first requested a decision from the zoning officer regarding the propriety of the establishment of the proposed facility in the C-2 zone. Such amendment would allow such an out-patient rehabilitation facility at the proposed location with the granting of a special permit. The amended ordinance was not applicable to the plaintiff at the time the appeal of the zoning officer's decision was before the board, and could not provide a basis for such denial. The justification offered by the zoning board in denying the plaintiffs petition, while poorly written in light of the zoning ordinance applicable at that time, clearly indicates that the Board felt that an out-patient rehabilitation treatment facility such as that proposed is not of the same nature as those which currently are permitted in the vicinity under the designation Business Services and Offices. The record contains substantial evidence that a methadone treatment center is a "use not mentioned" in the zoning ordinance as it existed at the time of the plaintiff's application, and is therefore not permitted.
SPECIAL PERMIT
The plaintiffs application for a special permit to operate a methadone treatment facility was heard on October 23, 1995 and denied on several grounds. Plaintiff now appeals that decision.
The purpose of the special-use permit in the context of zoning is to establish within the ordinance "conditionally permitted" uses. Nani v. Zoning Board of Review, 104 R.I. 150,242 A.2d 403 (1968); Westminster Corp. v. Zoning Board of Review,103 R.I. 381, 238 A.2d 353 (1968). The fact that a particular use is allowed in a zoning district by special permit means that the municipality has already determined that it is an appropriate use for the district. Nani v. Zoning Board of Review, 104 R.I. 150,242 A.2d 403 (1968)(uses permitted by special exception are those which the local legislature has conditionally permitted and has, at least implicitly, found to be harmonious with those uses which are permitted in the district). As such, it cannot be excluded by a decision of the zoning board unless the standards for such special permit are not satisfied with respect to its establishment at a particular site or location. Perron v. ZoningBoard of Review of Burrillville, 117 R.I. 571, 369 A.2d 638
(1977). A zoning board which expresses rejection of an application for a special permit in terms which would effectively bar the use anywhere in the district is, in effect, attempting to administratively veto a use conditionally authorized by the municipality. Hicks v. Warwick Zoning Board of Review,527 A.2d 1136 (R.I. 1987); see also Chase, Rhode Island Zoning Handbook, § 121.
In order to award a special permit, there must be a specific provision in the local ordinance which authorizes the proposed use by such special permit. The rules and regulations which govern the exercise of the board's authority to award that grant are found in the local ordinance as well. The board must consider all criteria specified in the ordinance in order to properly award a special permit. See Guiberson v. Roman Catholic Bishop ofProvidence, 112 R.I. 252, 308 A.2d 628 (1973); Lindberg's Inc. v.Zoning Board of Review, 106 R.I. 667, 262 A.2d 628 (1970);Piccerelli v. Zoning Board of Review of Barrington, 107 R.I. 221,266 A.2d 249 (1970). Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special-use permit. See Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878 (R.I. 1991).
The Woonsocket Zoning Ordinance § 15.8 allows special use permits under the following pertinent conditions:
 "[E]vidence to the satisfaction of the following standards [must] be entered into the record of proceedings;
 (1) That the special use shall be in harmony with the general purpose and intent of this ordinance;
 (2) That the special use is reasonably necessary for the convenience or welfare of the public;
 (3) That all appropriate conditions and safeguards are included in the special use permit in the form of stipulations."
Section 15.9 of the ordinance also provides that special conditions may be required in order to further the intent and plan of the comprehensive plan and the zoning ordinance.
Property in a C-2 zone where the subject property is located may be used as an out-patient facility by special permit pursuant to § 4.5(11) (Chart). The ordinance provision was added by amendment, effective September 29, 1995, and defines out-patient rehabilitation facility as follows: "An establishment used for the mental and/or physical rehabilitation of human patients, including drug and/or alcohol rehabilitation facility, that does not include overnight care facilities." The burden is on the petitioner to show that the proposed use will not have a detrimental effect on the public health, welfare, safety, or morals. Gara Realty v. Zoning Board of Review of North Kingstown,523 A.2d 855 (R.I. 1987); Toohey v. Kilday, 415 A.2d 732 (R.I. 1980).
The board cites insufficient parking and an increase in traffic as reasons for denial of the permit. Dr. Roberge, who operates a dentist's office at the subject location offered testimony regarding the parking situation as it currently exists at the site and his estimation of a projected increase in parking problems if this application for a special permit were granted. Ms. Joachim, Program Director, and Stephen Mackie, attorney for the plaintiff, both offered testimony that many patients would be expected to use public transportation and would not contribute to any potential parking problems. (Minutes at 3 and 4.)
In general, "lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Salve Regina College v. Zoning Board ofReview of the City of Newport, 594 A.2d 878, 882 (R.I. 1992)(citing Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)). The board may consider probative factors within its own knowledge or it may acquire adequate knowledge through observation and inspection. Toohey, at 737. The record in this case, however, must adequately reflect that particular evidence on which the board relies. Id.
The record in the instant matter reflects no expert testimony regarding the issue of parking or traffic. The record is also devoid of reference to the personal observations or knowledge of the board members as to the parking or traffic situation at the subject site. No substantial evidence exists on the record therefore to justify reference to parking or traffic issues as a basis for the denial of a special permit.
The decision of the board also offers as a justification for the denial of the special permit that "agencies already exist in the City to provide G.E.D. education, substance abuse education, and help to those with mental health and/or substance abuse problems." (Special Permit Minutes at 11.) The application for a special permit may not be denied on the ground that the applicant has failed to prove a community need for its establishment. Naniv. Zoning Board of Review, 104 R.I. 150, 242A.2d 403 (1968). InNani, the Court held that the denial of a special permit could not be based on a finding that there were already enough service stations in the city to take care of the motorists. (104 R.I. at 157.) To the extent that the instant decision to deny the special permit is based on the reasoning that other agencies already provide a like service in the City of Woonsocket, the decision is an error of law.
Finally, in denying the plaintiff s application for a special permit, the board offers that the business proposed is not reasonably necessary to serve the needs and convenience of the general public. (Special Permit Minutes at 11.) In order to issue a special use permit, the record must contain evidence which shows that such special use is reasonably necessary for the convenience or welfare of the public and is in harmony with the intent and purpose of the zoning ordinance. (Ordinance § 15.8.) The purpose of zoning in Woonsocket, pursuant to § 1.2 of the municipal ordinance, is to promote public health, safety, and general welfare, and to provide a range of uses and intensities of use appropriate to the character of the city, reflecting current and expected future needs.
The record reflects evidence that the proposed methadone treatment facility would provide prescription medication to individuals from Woonsocket and the surrounding communities who require such treatment, under the guidance and direction of licensed medical professionals, including a doctor and a nurse, thereby promoting the public health. Additionally, evidence on the record indicates that security will be present at the facility pursuant to federal regulations. Such security personnel are expected to be unarmed. Evidence indicates that security personnel at other facilities like that proposed have not been called to act in a law enforcement capacity. Law enforcement in the form of local police have never been called to the similar facility in another community, nor have complaints been registered with that police department regarding illegal or threatening activity in the vicinity. The record reflects substantial evidence regarding the promotion of public health and safety.
The record reflects speculative testimony regarding general concerns of community safety. Ms. Charette, a local resident, testified that she felt the proposed facility was too close to where a number of children live and to the shopping district. Mr. Pratt, Chief of the Woonsocket Police Reserve unit, testified that he had spoken with a number of elderly people who are concerned about walking past a methadone clinic. Mr. Pratt also indicated that he had read "from police reports that ninety percent of methadone patients are classified as petty thieves." (Special Permit Minutes at 8.) The testimony is evidence of the concerns of the witnesses, but is not evidence that issuing a special use permit for the proposed facility will be a threat to the safety of the citizenry.
The record contains substantial evidence that the proposed methadone treatment facility would promote the general welfare. Testimony from the program director of the plaintiff organization provides probative evidence as to the impact the methadone treatment facility would have on the citizens of Woonsocket and other nearby communities. Ms. Joachim testified that the projected client base are individuals who are actively working toward drug addiction rehabilitation. Dr. Wartenburg, the Medical Director, also indicated that the facility is expected to serve the broad rehabilitative needs of its client base, providing counseling and an environment of socially appropriate behavior. Additionally, the testimony of the representative of the local substance abuse task force supported that evidence. Ms. Auclair also testified that that there were Woonsocket residents who are opiate addicted who are not currently receiving treatment. Providing rehabilitative treatment to local residents certainly promotes the general welfare.
The intent and purpose of the zoning ordinance would also be served by the establishment of a facility such as is here requested.
The express intent of the Woonsocket zoning ordinance is to provide a range of land uses within the community, "appropriate to the character of the community and reflecting current and expected future needs." (Ordinance § 1.2.) The proposed facility is located in a C-2 zone, designated as a Major Commercial District. An out-patient treatment facility may only exist in the C-2 or the C-1 zone by special permit, and is not allowed under any of the other ten zoning designations. The municipality has designated this zoning district as appropriate for the establishment of an out-patient facility such as is here proposed. There is ample evidence on the record to show that the plaintiff has satisfied its burden.
The plaintiffs application may not be denied unless the standards or requirements for the special permit are not satisfied with respect to its establishment at this particular site. See Perron v. Zoning Board of Review of Burrillville,117 R.I. 571, 369 A.2d 638 (1977). Aside from the issues of parking and traffic which the Court finds to be impermissible grounds for denial, the remaining reasons offered by the Board as the basis for its denial have no relevance to the specific site proposed for the establishment of the out patient methadone treatment center. In denying the plaintiffs application, the Board is clearly attempting to administratively veto a use conditionally authorized by the municipality, an equally impermissible basis for denial. See Hicks v. Warwick Zoning Board of Review,527 A.2d 1136 (R.I. 1987).
CONCLUSION
Upon review of the entire record, the Court finds that the October 16, 1995 decision of the Board which upheld the determination of the zoning officer denying the plaintiffs application to establish an out-patient rehabilitation facility was not clearly erroneous, nor an abuse of discretion. It was not arbitrary or capricious or characterized by an unwarranted exercise of discretion. The decision was not in violation of any constitutional, statutory, or ordinance provisions, and was not in excess of the authority granted to the zoning board. There was no error of law. The plaintiffs first appeal is denied.
The Court further finds that the decision of the Woonsocket Zoning Board which denied a special permit to the plaintiff R.I.S.A.T. to establish an out-patient rehabilitation facility is clearly erroneous in light of the reliable, substantial and probative evidence on the whole record, and the plaintiffs rights have thereby been prejudiced. Accordingly, the October 23, 1995 decision of the Board is reversed and the Board is ordered to grant the special permit. The matter is remanded to the Woonsocket Zoning Board to consider at the earliest possible date whether special conditions are to be imposed regarding the issuance of such permit, and to notify the R.I. Department of Health immediately upon issuance of the permit.
Finally, pursuant to the October 31, 1995 order of this Court which restrained the Department of Health from neglecting or declining to review the plaintiffs application for Certificate of Need based on actions of the Zoning Board of Review of Woonsocket, the Department of Health is hereby directed to evaluate the plaintiff s application for a certificate of need upon receipt of notice that the above ordered special permit has been issued.
Counsel shall prepare the appropriate order for entry.
[1] The record consists of a transcript-like summary of testimony received during the hearings. The summary is more akin to minutes of a meeting than to a verbatim transcript. Recognizing that this transcription may not be a verbatim report of the actual words spoken by the witnesses, the specific language of the summary will be quoted as the factual basis upon which the Court must rely in reaching a decision.
[2] Incorrectly cited in the minutes as the "Howard" study.