DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Narragansett (the "Board" or "appellee"), denying an application for a special use permit and dimensional relief from the Zoning Ordinance of the Town of Narragansett § 6.4 — Dimensional Regulations. Jurisdiction is pursuant to G.L. 1956 §45-24-69. Per order of Presiding Justice Rodgers, this case was transferred from Washington County to Providence for assignment and disposition.
 FACTS AND TRAVEL
James, Janice, Timothy, and Toni Harvey (the "appellants") are the owners of real property situated in an R-10 Residential Zoning District and located at three (3) Maple Avenue in the Town of Narragansett, and known as Lot 19 on Assessor's Plat N in the Land Evidence Records of the Town of Narragansett (the "Property"). Situated on the Property are two cottages, both legal nonconforming structures. Pursuant to the Zoning Ordinance of the Town of Narragansett § 7.6(a) no more than one principal building may be built or located on a single lot. In this case, the appellants wish to raze both nonconforming structures and build two modern cottages in their places. Accordingly, in April of 2001, the plaintiffs applied to the Board for a special use permit and dimensional relief from the Zoning Ordinance of the Town of Narragansett § 6.4 — Dimensional Regulations.
On June 28, 2001 the Board held public hearings to consider the appellants' petition for relief. After considering the testimony of architect Kevin Munroe ("Munroe") and engineer Craig Carrigan ("Carrigan"), the Board, at a June 28, 2001 meeting, denied the appellants' petition for the special use permit and dimensional variance.[1] On August 20, 2001, the appellants timely filed the instant appeal.
 STANDARD OF REVIEW
Aggrieved parties may appeal a decision of the Board to this Court pursuant to G.L. 1956 § 45-24-69. This section provides that the Court's review of the decision:
 (c) shall be conducted . . . without a jury. The court shall consider the record of the hearing before the zoning board of review . . .
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or;
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. G.L. 1956 § 45-24-69.
Essentially, the reviewing court gives deference to the decision of the zoning board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances, and the decision of which must be supported by legally competent evidence.Monforte v. Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962); see, Rhode Island Temps, Inc. v. Department ofLabor and Training, 749 A.2d 1121, 1125 (R.I. 2000) (defining competent evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.") This deference, however, must not rise to the level of "blind allegiance." Citizens Savings Bank v.Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985). The court conducts a de novo review of questions of law; thus the court may remand the case for further proceedings or potentially vacate the decision of the zoning board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." Von Bernuth v. Zoning Bd. ofReview, 770 A.2d 396, 399 (R.I. 2001); G.L. 1956 § 45-24-69(d)(5).
 NONCONFORMING USE
It is axiomatic that the law disfavors uses and structures which do not conform to constitutionally valid zoning ordinances. 4 Arden Rathkopf and Daren Rathkopf, The Law of Zoning and Planning § 51.08[6] at 51-152 (4th ed. 1998). Thus, it is often said that "the spirit of zoning is to restrict, rather than increase, nonconforming uses and to eliminate such uses as speedily as possible . . . ." Id. Despite this, however, the law recognizes exceptions where nonconformities may be finitely altered or expanded within reason.
The Rhode Island Zoning Enabling Act, for example, provides that municipalities wishing to allow alterations of nonconformities may do so by ordinance, through a special use permit, or as of right. G.L. 1956 § 45-24-40(A). Presently, the Zoning Ordinance of the Town of Narragansett § 9.1(2) — nonconforming use of buildings orstructures, provides:
 "[t]he nonconforming use of a building or structure may be continued, provided that the building or structure is not enlarged, extended or reconstructed without the grant of a special use permit, except for such alteration, maintenance and repair work as is required to keep said building or structure in a safe condition or constitutes remodeling of the existing building or structure without substantial structural alterations." Zoning Ordinance of the Town of Narragansett, § 9.1(1).
Accordingly, the Zoning Ordinance of the Town of Narragansett § 10.1 — special use permit required, provides:
 "The zoning board of review may grant a special use permit on the enlargement, extension, structural alteration or reconstruction of an existing building or structure which constitutes a nonconforming use following site plan review, provided the work complies with all of the following applicable development standards:
 (1) The reconstructed building does not result in an increase in the existing degree of any dimensional nonconformity;
 (2) The footprint of the building or structure is not expanded, extended, or enlarged by greater than twenty-five (25) percent of the existing building footprint as of October 11, 1989;
 (3) The exterior appearance of the reconstructed building remains substantially the same or is changed to enhance its appearance on the site and [in] harmony with the surrounding area;
 (4) It must be demonstrated that the site can accommodate the proposed level of use. Consideration shall include but not be limited to, safety, traffic, parking, sewage disposal capacity, utilities, noise levels, odors and quality of water and air." Zoning Ordinance of the Town of Narragansett, § 10.1. (Emphasis added).
In conformance with the principle that nonconforming uses or structures should be accorded only limited tolerance, is the well-accepted notion that "if . . . improvements [to a nonconforming property] are destroyed or abandoned, [the owner] has lost the value of his investment independently of the ordinance and there is no reason why his relationship to the zoning ordinance should be any different from that of his neighbor whose property was unimproved." Rathkopf, § 51.08[6] at 51-153 (quoting Service Oil Co. v. Rhodus, 179 Colo. 335, 500 P.2d 807, 813-814 (1972)). Thus, it is not uncommon for zoning ordinances to "discourage the re-establishment of nonconforming uses, the investment value of which has been lost to the owner through accident and through no action on the part of the municipality." Id. at 51-152. The Zoning Ordinance of the Town of Narragansett § 9.1(2), for example, provides that "[i]f a nonconforming building or structure is voluntarily
demolished, it shall not be rebuilt except in conformity with the provisions of this ordinance. Id. (Emphasis added.)
In the instant matter, the appellants argue that pursuant to the Zoning Ordinance of the Town of Narragansett § 10.1, the Board should have granted them a special use permit allowing the involuntary razing and re-building of the two nonconforming structures located on the Property. Specifically, the appellants contend that they either met or exceeded the requirements of § 10.1, and therefore, the Board's denial of the special use permit was erroneous. The appellants also argue that § 9.1(2) and § 10.1 are laden with ambiguities making it unclear whether the Town intended to proscribe the reconstruction of a voluntarily or involuntarily demolished nonconforming structure, or both. Any ambiguity in the ordinance, the appellants contend, should be resolved in favor of the landowner.
Usually, zoning ordinances are given their plain and ordinary meaning; thus, when a zoning ordinance is subject to more than one reasonable interpretation, the one "which allows the least restrictive use of property controls." 3A Norman J. Singer, Statutes and StatutoryConstruction § 75.07 at 439 (5th ed. 1992). However, as zoning boards are presumed to know the effective administration of the ordinance, the reviewing court gives deference to the board's interpretation of its governing ordinance. Monforte, 93 R.I. at 449, 176 A.2d at 728. In the case at bar, the appellants contend that because the two cottages are so dilapidated and structurally unsound, their removal would constitute an `involuntary demolition' and thus, since § 9.1(2) addresses only the rebuilding of voluntarily demolished structures in conformity with the applicable zoning ordinance, this section should not prevent the appellants from constructing two new cottages in place of the dilapidated ones. See generally Tr. of June 21, 2001. Furthermore, the appellants argue that because § 9.1(2) and § 10.1 do not clearly indicate whether the Town intended to proscribe voluntary or involuntary demolitions or both, this ambiguity should be resolved in the appellants' favor — i.e., allowing the construction of two new cottages on the single lot.
The record demonstrates that the appellants have not demonstrated why dilapidated structures should qualify as an involuntary demolition for the purposes of § 9.1(2). Furthermore, the record shows that the appellants' proposed demolition would be voluntary since it would be their own affirmative act causing such demolition. The plain language of § 9.1(2) prohibits constructing a nonconforming structure in place of a voluntarily demolished structure. Thus, the Zoning Ordinance of the Town of Narragansett is not ambiguous with respect to these particular appellants, and this Court need not consider whether the Town intended to include involuntary demolitions in the prohibitory language of § 9.1(2) and § 10.1.
It is also apparent from the plain language of § 10.1 that the decision to grant or deny a special use permit is within the discretion of the Board. Such discretionary power "is intended to provide a necessary flexibility in exceptional cases in order to relieve landowners from arbitrary results of a literal enforcement of terms of a zoning ordinance." Roland F. Chase Rhode Island Zoning Handbook § 120 at 135 (1993) (citing Hicks v. Warwick Zoning Bd. of Review, 527 A.2d 1136
(R.I. 1987)). Nevertheless, it is well-accepted that "[t]he rules and standards governing the exercise of a zoning board's authority to grant special use permits are found in the zoning ordinance." Id. At 138 (citingGuiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252,308 A.2d 503 (1973)). "Those rules and standards, including dimensionalrequirements, are conditions precedent to an exercise by the board of its authority to act affirmatively on an application for a permit. Id.
(citing Barbone v. Zoning Bd. of Review of Warwick, 107 R.I. 74,264 A.2d 921 (1970)) (Emphasis added). Ultimately, a special use permit "is not intended as a method of sanctioning nonconforming conditions which were brought about by a landowner subsequent to the adoption of zoning regulations." Id. (citing Rozes v. Smith, 120 R.I. 515, 388 A.2d 816
(1978)).
With respect to the instant application, section 10.1 requires that the structure "complies with [the enumerated] development standards . . . ." Specifically, development standards (1) and (2) provide respectively:
 "(1) The reconstructed building does not result in an increase in the existing degree of any dimensional nonconformity;
 (2) The footprint of the building or structure is not expanded, extended, or enlarged by greater that twenty-five (25) percent of the existing building footprint as of October 11, 1989." Zoning Ordinance of the Town of Narragansett § 10.1.
In the present case, the record reflects that the Board had before it the testimony of Munroe (the architect) and Carrigan (the engineer). Specifically, Munroe testified that the structures located on the Property were "structurally unsound," Tr. of June 21, 2001 at 6, and that the Property would be able to "accommodate [the proposed] level of use." Id.
at 14. The Board also had before it the June 14, 2001 recommendation of the Town Planning Board (the "Planning Board") opining, inter alia, that the appellants' proposed development contravened the density requirements of the Narragansett Comprehensive Plan and that the proposed development might cause parking difficulties in the immediate area. Project SummaryLetter of June 14, 2001 at 2. The Board also heard probative evidence that the square footage of the proposed development would exceed the permissible square footage of an R-10 zoning district. Id. at 1.
The appellants additionally sought dimensional relief in conjunction with the special use permit. While the appellants have not appealed the Board's denial of their request for dimensional relief, a brief discussion respecting the merits of that aspect of the appellants' petition is nevertheless warranted. Generally, dimensional relief may be sought in conjunction with a permitted use, not a conditionally permitted use, as here would be required for reconstruction of the subject cottages. Newton v. Warwick Zoning Bd. Of Review, 713 A.2d 239, 242 (R.I. 1998) (holding that where a zoning ordinance so requires, a dimensional variance may be granted only for a legally permitted use, not a use which is authorized by a special use permit.) With respect to the general granting of special uses, the Zoning Ordinance of the Town of Narragansett § 12.5 — standards to be met, in pertinent part provides:
 "The zoning Board of review may not grant a special use permit unless it finds the following:
 (1) That the use will comply with all applicable requirements and development and performance standards set forth in Sections 4 and 7 of this ordinance . . ." Zoning Ordinance of the Town of Narragansett, § 12.5.
Section 10.1 of the Zoning Ordinance of the Town of Narragansett, meanwhile, governs special use permits for nonconforming development.See discussion supra p. 4. The Narragansett Ordinance, other than with respect to dimensional variances from dimensional setbacks as specifically provided in § 12.5(1), prohibits the granting of a special use permit along with dimensional relief. Thus, compliance with dimensional regulations constitutes a prerequisite for granting a special use permit. Pursuant to the applicable § 10.1 provision, the appellants are required to comply with the dimensional regulations as a prerequisite for obtaining the special use permit. Accordingly, the Board's denial of dimensional relief was not in excess of its statutory authority or in violation of ordinance provisions.
After considering all the evidence before it, the Board found that the proposed development would contravene the Narragansett Comprehensive Plan, would be a "detriment to the surrounding properties," and "may create potential health and safety issues due to the level of use proposed." Decision of September 18, 2001 at 2. Thus, since it is well established that the zoning boards are "vested with discretion to accept or reject the evidence presented," Bellevue Shopping Ctr. Ass'n v.Chase, 574 A.2d 760, 764 (R.I. 1990), and since the record indicated that the appellants' proposed site plan lacked many of the elements necessary for obtaining dimensional relief, the Board's findings and decision denying the appellants' application for a special use permit were supported by the reliable, probative, and substantial evidence of the whole record and did not constitute an abuse of discretion. SeeBrindamour v. City of Warwick, 697 A.2d 1075 (R.I. 1997).
 CONCLUSION
The Board's conclusion that the appellants' proposed demolition and reconstruction of two nonconforming cottages would, inter alia, "not be in the public interest . . . would be inconsistent with the Comprehensive Plan of Narragansett . . . [and] may create potential health and safety issues due to the level of use proposed," Decision of September 18, 2001
at 2, is supported by the substantial evidence of record. The record indicates that the Board, which weighed the information and recommendations provided to it by the Planning Board against the testimony of Munroe and Carrigan, did not abuse its discretion. The Board had reliable and probative evidence before it that the appellants' proposed development contravened the Zoning Ordinance of the Town of Narragansett § 9.1(2) and thus, did not satisfy the requirements of § 10.1 and § 12.5 regarding special use permits. After reviewing the entire record, this Court finds that the Board's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record and did not constitute an abuse of discretion. Substantial rights of the appellants have not been prejudiced. The Decision of the Board is hereby affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] This decision was later recorded in a written decision of September 18, 2001. While the Board denied requests for both a special use permit and a dimensional variance, the appellants are not appealing the denial of dimensional relief.