DECISION
This is an appeal from a decision of the Zoning Board of Review ("Board) of the Town of Foster. The appellant, Roberts/Holland LLC ("Holland" or "appellant") is appealing the Board's October 12, 2000 decision granting Industrial Communications and Robert Plante ("Industrial" or "applicants") a special use permit and lot line variance to replace and rebuild a communication tower and an accessory equipment shelter. Jurisdiction in this Court is pursuant to G.L. 45-24-69.
 Facts/Travel
The communication tower is located on Hartford Pike, Assessor's Plat 16, Lot 15, in Foster, Rhode Island and is zoned as Agricultural-Residential (AR). Industrial Communications is in the communications business and entered into an agreement with Plante to purchase the property on which the communication tower exists. Robert Plante purchased the property with the communications tower already existing on the property in 1971 from Concert Radio Network. The tower is currently used for broadcasting by Providence and Worcester Railroad, Seaport Communications and Mr. Plante. The tower has been in continuous use since 1948. The subject property consists of approximately 2.1 acres measuring approximately 460 feet by 203 feet. Located on this property is a 198 foot communication tower, two residential homes measuring 23 feet by 28 feet and 50 feet by 25 feet, a garage measuring 12 feet by 24 feet, and one accessory building measuring 25 feet by 12 feet.
Industrial Communications sought permission from the Board to replace and rebuild the existing communication tower and expand the service building. This proposal would require dismantling both the current tower, replacing it with a tower measuring 190 feet, and an accessory building to the tower measuring 2,000 square feet. The applicants also requested a variance from the side yard requirements allowing for the new tower to be 100 feet closer to Holland's property. The appellant owns a large parcel of land which abuts the subject property on three sides.
The Board held advertised public hearings on the matter on August 9 and September 13, 2000, to consider Industrial's application. The main objector at these hearings was the abutting land owner, Holland. Holland's main objection was the relocation of the new tower 100 feet closer to its property. Holland also objected to the tower being over 70 feet, which it contended was the maximum height a telecommunications tower was allowed to be by ordinance in the Town of Foster. On September 13, 2000, the Board voted on the application. After considering Holland's arguments, the Board voted 5-0 to grant the application. The matter was then referred to the Foster Planning Board for its final approval.
On September 20, 2000, the Foster Planning Board held a meeting to give its final approval. At that meeting, the Planning Board imposed several conditions on the approval of the application. One of those conditions was a signed agreement between Industrial and Holland, acknowledging that if the tower was moved 70 feet or less to the south, Roberts/Holland would have no objection to reconstruction of the tower. Industrial claims it was able to meet the conditions imposed by the Board at its September 20, 2000 meeting except for the procurement of Holland's signature approving the movement of the tower 70 feet to the south. On November 1, 2000, the Planning Board heard this matter at which time Holland had no objection to the removal of the requirement of a signed agreement, thus allowing the Board to remove that specific condition.
On October 12, 2000, the Zoning Board issued its final opinion with the Town Clerk. In approving the application, the Board found the tower was a pre-existing use and could be replaced and that an equipment structure would be required to house its equipment and additional carriers as an accessory building to the tower. However, the Board maintained several restrictions on its approval of the application. Specifically, the Board required that one residential structure remain on the property to retain the residential use and that in construction of the new equipment shelter, construction not exceed 3% coverage of the lot and include the residential structure. The Board also found that the application effectuated the intent of the relevant zoning ordinance and comprehensive plan. On October 31, 2000, Holland timely filed the instant appeal.
On appeal, the appellant argues that Article IV section 7 (20) and (21) of the Foster telecommunications ordinance prohibits communications towers and antennas in AR zones.[1] Furthermore, appellant contends that the Board was in error in granting applicants the right to construct a 190 foot tower because Section 20(3)(c) mandates that an alternative tower shall only be 70 feet in height. The appellant also contends that the expansion of the telecommunications equipment storage space from 100 square feet to 2,000 square feet is improper. Appellant contends the building as it exists is not an accessory building but rather a room in a residential dwelling. Appellant contends that Industrial failed to file the proper special use permit to enlarge this specific structure and, therefore, the Board improperly decided on this issue. Consequently, appellant objects to the Board's decision to expand what they call a pre-existing, non-conforming use.
 Standard of Review
The Superior Court review of a Zoning Board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the Zoning Board of Review as to the weight of the evidence on questions of fact. The court may affirm the decision of the Zoning Board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the Zoning Board of Review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a Zoning Board, a justice of the Superior Court may not substitute his or her judgment for that of the Zoning Board if he or she conscientiously finds that the Board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n. Inc. v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of Fire Fighters, AFL-CIO, Local 1589,119 R.I. 506, 380 A.2d 521 (1977)).
 Exhaustion of Remedies
Initially, defendants argue that procedurally the appellant should have filed this appeal from the Planning Board decision rather than the Board's decision. Industrial argues that the decision of the Zoning Board was not final because the Zoning Board referred the matter to the Planning Board for final approval. Industrial states that the proper procedure would have been an appeal from the Planning Board, under G.L. § 45-23-67, which provides that the Board would be the local "Board of Appeal" from a decision of the Planning Board. Consequently, Industrial contends that the current matter before this Court has been improperly brought and is interlocutory in nature. However, this Court finds that the appellant properly appealed from a final decision of the Zoning Board pursuant to G.L. § 45-24-69. Section XIII, "Procedure For Approvals Between Planning Board and Other Local Permitting Authorities," states:
 "Where an applicant requires both a special-use permit under the Zoning Ordinance and Planning Board approval, the applicant shall first obtain an advisory recommendation from the Planning Board, as well as conditional Planning Board approval for the first conditional special-use permit from the Zoning Board, and then return to the Planning Board for subsequent required approval(s)."
Pursuant to Section XIII on an application for a special exception, the Board is allowed to return to the Planning Board for "subsequent required approval." Consequently, Industrial's argument that appellant has improperly filed an appeal from the Board rather than the Planning Board is without merit.
 The Telecommunication Tower
The appellant's main argument on appeal is that the Board incorrectly applied the standards necessary to grant a special use permit and that it acted in contravention of the language of the telecommunications ordinance. Section 20 (B) "Regulations Pertaining to Communications Towers and Antennas" states:
 "No communications antenna array or communications tower shall be erected, constructed, altered, or maintained on any lot within the town of Foster after the date of enactment of this Amendment November 19, 1998, without complying with the terms of this section."[2]
 . . .
The appellant argues that the construction of all communication towers is prohibited in the town of Foster after November 19, 1998, as this ordinance evidences the town's intent to prohibit the further construction of communication towers in Foster. The appellant further contends that Industrial has not complied with Section 20(3)(c), which mandates that an alternative tower structure shall be seventy (70) feet." Therefore, the appellant maintains, a replacement tower greater than 70 feet is disallowed on the subject property. Appellant also relies on Article IV Section 7 (20), which prohibits the erection of communication towers and antennas in an AR zone.
The appellant further contends that the Board has not only violated the Foster telecommunications ordinance but also has granted a special use permit for something not specifically authorized by the ordinance. Industrial contends that "the zoning ordinance has a special provision on telecommunication towers" and one needs a special use permit or exception to "enlarge or move or replace any telecommunications tower on a piece of land." (Tr. at 6). The appellant contends that because the zoning ordinance does not allow for the construction of a tower over 70 feet in an AR zone or allow for a special use permit to enlarge, move, or replace any telecommunications tower, the Board committed error in granting a special use permit for construction of the defendant's tower which would measure 190 feet.
The power of a Zoning Board to make exceptions to terms of a zoning ordinance is controlled by the zoning ordinance. McNalley v. Zoning Board of the City of Cranston, 230 A.2d 880, 102 R.I. 417 (1967). An exception is relief from a zoning ordinance as expressly allowed by the ordinance. Bamber v. Zoning Board of Foster, 591 A.2d 1220 (R.I. 1991). A special use must be expressly allowed by the ordinance. The power of a Zoning Board of Review to grant a special use permit is limited by the provisions of the ordinance. Dean v. Zoning Board of Warwick, 120 R.I. 825, 829, 390 A.2d 382 (1978). The rules and standards governing the exercise of a Board's authority to grant a special use permit are "conditions precedent which must be met" before the Zoning Board is authorized to grant the permit. Guiberson v. Roman Catholic Bishop, 112 R.I. 252, 259,308 A.2d 503 (1973).
The only relevant section of the Foster ordinance which requires a special use permit for a non-conforming use is section 7, "Existence by Variance or Special use Permit."[3] However, that ordinance applies to non-conforming uses which "exist by virtue of variance or special use permit granted by the Board." Here, the current non-conforming use does not exist by virtue of either a variance or a special use permit.
Nevertheless, Industrial presented evidence to the Board that the tower proposal meets all of the criteria set forth in the sections of the ordinance authorizing such use, specifically, Article IV section 20. The Board heard evidence supporting the fact that the proposal met the construction criteria of section 20(C)(4) as well as the general requirements under Article IV section 20. Representatives from Industrial testified that the granting of the special use permit would not alter the general character of the surrounding area or impair the intent or purpose of the telecommunications ordinance or the comprehensive plan of the town. The Board heard testimony from Tara Calabrese, a site acquisition specialist for Industrial. Ms. Calabrese testified that the proposal as planned would preserve the natural rural landscape which is one of the goals under the comprehensive plan. She further stated that by placing the tower farther back from its current location, the visual impact of the tower would be reduced. Finally, she stated that the accessory building would be constructed so that it would be nearly invisible from the road. (Tr. at 20-22).
The Board's decision, to the extent it relied on section 7, was erroneous. The Foster telecommunications ordinance does not require a special exception for extension of a pre-existing non-conforming use. Rather, an applicant may continue a pre-existing non-conforming use under Article V section 5 and 9 of the Foster zoning ordinances. In Hugas Corp v. Veader, 456 A.2d 765 (R.I. 1983), a Barrington zoning ordinance regarding signs expressly permitted the Board to grant by special exception an extension of a pre-existing non-conforming use of a building and an exception to the applicable sign requirements. 456 A.2d at 770. Here, the telecommunications ordinance did not provide for such special exception. Notwithstanding this error, the Board's ultimate decision on the issue of a special use exception did not substantially prejudice appellant. "In this jurisdiction it is well established that [this] [Court] [is] allowed to sustain a correct judgment even if it was reached through faulty reasoning or mistake of law." Mesolella v. City of Providence, 439 A.2d 1370, 1373 (R.I. 1982).
The Board ultimately determined in the instant matter that the use of the tower was a pre-existing nonconforming use, which would be allowed to continue under sections 5 and 9 of the Foster zoning ordinance. Industrial contends, as the Board found, that the tower, as presently situated on the property, is a pre-existing non-conforming use. As adduced at the hearing, the use of this tower dates back to 1948 when it was used for various communication services. Accordingly, Industrial contends it is entitled to continue this pre-existing, albeit non-conforming use. Section 45-24-39 states:
 "(a) Any city or town adopting or amending a zoning ordinance under this chapter shall make provision for any use, activity, structure, building, or sign or other improvement, lawfully existing at the time of the adoption or amendment of the zoning ordinance, but which is nonconforming by use or nonconforming by dimension . . ."
Industrial maintains the Foster zoning ordinance, which Holland argues they are subject to, went into effect on July 7, 1967. Therefore, Industrial contends the use for a telecommunications tower is protected under section 5 and 9, which state respectively:
 "5. A lawfully established use of land, building, or structure which is not a permitted use in the zoning district in which it is located is nonconforming by use."
 "9. Nothing in this ordinance shall prevent or be construed to prevent the continuation of a nonconforming use of any building or structure for any purpose to which such building or structure was lawfully established."
The commercial use of this site, according to Industrial, pre-dates the subject zoning regulation offered by the appellants. As a result, Industrial argues that the continuation of this pre-existing nonconforming use is specifically authorized.[4] A "nonconforming use" is a particular use which does not conform to zoning restrictions applicable to certain property but which use is protected against restrictions because it existed lawfully prior to effective date of zoning ordinance and has continued unabated since that time. Town of Scituate v. O'Rourke, 239 A.2d 176, 103 R.I. 499 (1968). Industrial also notes that a mere change in ownership does not destroy the continuation of a nonconforming use. Town of Coventry v. Glickman, 429 A.2d 440 (R.I. 1981).
Furthermore, under Section 20(3)(d) of the Foster ordinance "the maximum height for a free standing tower is set at 190 feet." The 70 foot requirement, which appellant contends applies in this situation, is simply not applicable according to Industrial. In order for that section to apply, according to Industrial, an alternative tower structure must be erected, such as chimney, church steeple, or an artificial tree. Although the record reflects that the current tower is not an alternative tower, as suggested by appellant, such a distinction is irrelevant in the instant matter. Although section 20(3)(d) permits the maximum height for a tower to be 190 feet, such a tower is not permitted in an AR zone. Therefore, that section would be inapplicable in the instant matter. Pursuant to the ordinance, the applicant is permitted to construct a 190 foot tower in an otherwise prohibited zone because it is continuing a pre-existing non-conforming use.
 The Accessory Building
The appellant additionally argues that Industrial required dimensional relief and a special exception to reconstruct and enlarge an existing 100 square foot telecommunications equipment storage space to 2,000 square feet. The appellant contends that this is not a telecommunications equipment building but rather a small room in an existing residential dwelling. Therefore, appellant maintains this is a nonconforming use and to allow the expansion of a commercial use in a residential area is contrary to the Foster zoning ordinance. The appellant avers that a nonconforming use should not be expanded upon and that "it is intended that existing nonconforming uses shall not justify departures from this ordinance for themselves, or for any other properties." (Quoting Foster zoning ordinance Article V Section 8)
However, Article V Section 12 of the Foster zoning ordinance governs pre-existing uses. Section 12 provides:
 "a pre-existing use, which is not a prohibited use under Article IV section 14 may be enlarged for the same use, provided such enlargement is within the limits of the lot of record the use occupies at the time of the passage of this Ordinance, and subject to the dimensional requirements for front, side and rear yard depth and height of Article IV, section 13 for the district of its location. In the case of enlargement of a single family residence structure, the district dimensional requirements for front, side and rear yard depth may be modified by permitted use by special use permit under Article IV, Section 13 . . ."
Appellant contends a special use permit is required to enlarge the accessory building. However, section 12 requires "in the case of enlargement of a single family residence structure," the dimensional requirements must be modified by "permitted use by special use permit under Article IV, section 13." Industrial is not enlarging a family residence; rather, it is enlarging a pre-existing use which is not a prohibited use under Article IV, section 4. Here, the pre-existing use of the accessory structure is not prohibited. Industrial is continuing the use of the accessory structure, which is within the dimensional requirements for front, side and rear yard depth and height for its district, as required by section 12. In fact, the Board carefully considered the lot restrictions associated with the subject property. In its final decision, the Board explicitly limited this "accessory use" structure to 3% of the property (2,744 square feet) and conditioned that a residential dwelling be maintained on the property to keep its residential status. Thus, a 2,000 square foot equipment building, as proposed, would be allowed under Article V section 12. Therefore, Industrial satisfied the dimensional requirements and did not require a special use permit.
Moreover, under Article VI, section 20(C)(3)(c) "equipment buildings are considered as accessory buildings and shall comply with the applicable setbacks of the underlying zone." The side lot requirement for such a building in an AR zone is 50 feet. The Board found and the record reflects that Industrial satisfied the dimensional requirements for an accessory use and did not require a special exception.
After a review of the entire record, this Court finds that the decision of the Board was not clearly erroneous and was supported by the reliable, probative, and substantial evidence of record. Substantial rights of the appellants have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit an appropriate order for entry.
[1] According to Article IV section 20, an alternative tower is allowed in an AR by special use permit. Under Article IV section 21, Communication Towers and Antennas are prohibited in a AR zone.
[2] Compliance with this section requires various procedural requirements such as Development Standards, Submission Standards, Location and Construction Criteria with which Industrial has seemingly complied.
[3] Section 7 of the Foster zoning ordinance states: "A nonconforming building, structure, sign, or parcel of land or the use thereof, which exists by virtue of variance or a special use permit (or a special exception) granted by the Board, shall not be considered non-conforming for the purposes of this Article, and shall not acquire the rights of this Article. Rather, such building, structure, sign, parcel of land, or use thereof, shall be considered a use by variance or a use by special use permit and any moving, addition, enlargement, expansion, intensification or change of such building, structure, sign, parcel of land or use thereof, to any use other than a permitted use or other than in complete conformance with this Ordinance, shall require a further variance or special use permit from the Board."
[4] Industrial erroneously believes that the continuation of the pre-existing non-conforming use can only be granted by first satisfying a special use exception.