DECISION
Before this Court is an appeal from a decision of the Town of Foster Zoning Board of Review. Appellants Elaine T. Piccirilli and Vincent J. Piccirilli seek reversal of the Zoning Board's decision, filed with the Town Clerk on February 15, 2001, granting the application of Message Center Management for a special use permit to allow it to construct a wireless communications tower and related structures. For the reasons set forth in this decision, this Court affirms the Zoning Board's decision.
 Facts and Travel
Elaine T. Piccirilli and Vincent J. Piccirilli (the "appellants") are residents of Cranston, Rhode Island and own real estate on Central Pike in the Town of Foster (the "Town") that abuts real estate owned by appellee Herman Sheppard ("Sheppard"). The property owned by Sheppard that is at issue in this appeal consists of 566,280 square feet, or approximately thirteen acres, and is located at 195 Danielson Pike (U.S. Route 6) in Foster, Rhode Island and is further designated as Lot 88 on Tax Assessor's Plat 10 (the "Property"). The appellants also hold a deed from Sheppard that grants them a fifty foot right of way over the Property. Message Center Management ("MCM"), a company that constructs and manages wireless communications towers, entered into an agreement with Sheppard that authorized MCM to construct a tower and several equipment shelters on a portion of the Property. The Property contains split zoning: one portion is zoned for highway/commercial uses, while another portion is zoned for agricultural/residential uses. MCM proposes to construct the tower complex entirely on that portion of the Property that is zoned highway/commercial. The Town's Zoning Ordinance (the "Ordinance") allows telecommunications towers in areas zoned highway/commercial, provided that the Zoning Board grants a special use permit.
The area of the Property zoned highway/commercial currently contains three buildings that occupy a total of 7,196 square feet: a diner (2,276 square feet), a convenience store (3,832 square feet), and a residence (1,088 square feet). Under the Ordinance, the maximum building coverage permitted in a highway/commercial zone is either 25% of the property, or 6,000 square feet, whichever is smaller. To comply with the 6,000 square foot restriction of the Ordinance, MCM proposes to demolish 2,326 square feet of the convenience store, thereby reducing the total area of that structure to 1,506 square feet. In addition to the 150 foot high tower, which will have a 170 square foot base, MCM proposes to construct four 200 square foot equipment shelters and two 60 square foot concrete pads. Thus, MCM's proposal calls for a transmission facility that will occupy 1,090 square feet. After modification of the convenience store, the total building coverage on the Property will be 5,960 square feet. A 50' x 70' chain link fence will surround the transmission facility and MCM plans landscaping to provide a natural buffer.
MCM filed an application with the Zoning Board for a special use permit to construct the tower.[1] Thereafter, MCM filed an application for land development with the Town of Foster Planning Board (the "Planning Board").
On October 11, 2000, the appellants received certified mail notice of a public information meeting on MCM's application for land development scheduled for October 18, 2000 before the Planning Board. At that meeting, the Planning Board received a site plan from MCM on its proposed development of the Property. Ann Grenier, the Town Planner, explained at the meeting that the next step would be to review the submitted information, consider any comments made by the public, decide if further information were needed, and write an advisory opinion to the Zoning Board. She further explained that after the Planning Board issued its advisory opinion, the Planning Board would convene a public hearing. The Planning Board unanimously voted at that meeting that its review of the master plan stage of MCM's application should proceed, contingent on the conditions it had approved and subject to the Town Solicitor's opinion as to: 1) whether the Planning Board could approve a wireless provider that was not a licensed carrier; and 2) whether the fenced-in area should be included in the calculation of the amount of building coverage under the Ordinance. Appellant Vincent J. Piccirilli attended the October 18, 2000 meeting and requested that the Town Planner inform him of future meetings at which the proposed construction would be discussed. Also at that meeting, the Planning Board recorded that its next scheduled meeting would be held on November 1, 2000.
At some point after the October 18, 2000 meeting, the Planning Board posted at various locations in Foster an agenda for a "work session" scheduled for November 1, 2000. The agenda for this work session indicated that that the Planning Board did not intend to limit its discussion to MCM's application for land development. Under the subheading "Commercial Site Review," the agenda indicated that the Planning Board intended to discuss the final plat submissions associated with a proposed industrial communications tower on property identified as "AP 16, Lot 15," as well as the "Continuation of Site Plan Review" for MCM's proposed tower on the Property. Furthermore, under the subheading "Work Session," the agenda informed the public of the Planning Board's intent to discuss article VI, section 20 of the Town of Foster Zoning Ordinance (concerning major land development) and a survey sent to the Town Planner on behalf of the Board.
At the November 1, 2000 work session, the Planning Board discussed all matters indicated on the agenda. Representatives of MCM attended the work session and presented information to the Planning Board about its proposal. Planning Board Vice Chair Joseph McGinn read a letter dated October 31, 2000 from the Town Solicitor. The Town Solicitor's letter was in response to a letter from Ann Grenier, in which she requested answers to the two questions that the Planning Board raised at its October 18, 2000 meeting. The Town Solicitor's letter advised that a wireless provider applicant need not be a licensed carrier and that a fenced-in area enclosing the tower should not be included in measuring building coverage. Ann Grenier also informed the Planning Board that it was required to have a public hearing if the Zoning Board granted a special use permit. After other aspects of MCM's application were discussed, the Planning Board unanimously voted at the meeting to approve the master plan stage of the proposed development, classifying it as a major land development according to article VI, section 20 of the Ordinance.
On November 8, 2000, the Planning Board sent notice of its approval of MCM's application for land development to the Zoning Board in an advisory opinion, which outlined its findings of fact as required by section III(A) of the Town of Foster Land Development and Subdivision Regulations ("Land Regulations"). The Planning Board recommended approval based on the following: 1) the Telecommunications Act of 1996 does not require that an applicant for a special use permit either be a licensed wireless service provider or represent one; and 2) MCM established that wireless service coverage was needed at the subject location. The Planning Board sent copies of the advisory opinion to MCM and its attorney. The Planning Board also required that MCM return to the Planning Board for approval of both the preliminary and final plan stages of its proposed development.
On or about December 10, 2000, the appellants received notice of a January 10, 2001 public hearing before the Zoning Board on MCM's application for a special use permit. The Zoning Board later postponed the January 10, 2001 hearing until January 17, 2001. The appellants and MCM attended the January 17, 2001 public hearing. MCM presented testimony from: Richard Quintal, a site acquisition representative from MCM; James Sperry, a landscape architect from BL Companies; and Thomas Sweeney, a real estate appraiser and broker with Rodman Real Estate. All three witnesses testified that the proposed construction complied with the Ordinance. Mr. Sweeney, who the Board unanimously accepted as an expert, further testified that MCM's proposal was consistent with the uses in the area and that it would not impact negatively on the surrounding properties or alter their general character. The Board received no testimony or evidence showing that the proposed development would hinder the Town's development or create a nuisance.
The Zoning Board found that the proposed construction was consistent with town regulations and would not adversely affect the surrounding area. Concluding that the proposal effectuated the intent of the Ordinance and the Comprehensive Plan for the Town of Foster, the Zoning Board voted to approve the application for a special use permit.[2] On February 15, 2001, the Zoning Board filed its decision with the Town Clerk.
On February 26, 2001, the appellants filed a timely appeal from the Zoning Board's decision to grant the special use permit.[3] On appeal, the appellants argue, as follows: 1) the Planning Board never conducted a public hearing on the application as required by R.I. Gen. Laws §45-23-41(d) and the Town of Foster Land Development and Subdivision Regulations, § VI(D); 2) the location of the proposed tower blocks the easement granted by Sheppard to the appellants; 3) the application does not comply with § 13(C) of the Ordinance because MCM's proposed building coverage on the Property exceeds 6,000 square feet; and 4) the Zoning Board acted erroneously and abused its discretion in granting the special use permit in light of the reliable, probative, and substantial evidence of record.
MCM and Sheppard respond, in their memoranda, as follows: 1) the appellants' claim that the Planning Board never conducted a public hearing on the application is an improper attempt to appeal the Planning Board's approval of the master plan in addition to the present appeal of the Zoning Board's decision to grant the special use permit; 2) the proposed building coverage on the Property will comply with the requirements of § 13(C) of the Ordinance; and 3) the Zoning Board heard competent evidence to establish MCM's entitlement to a special use permit. MCM and Sheppard do not respond to the appellants' argument that the proposed development will block their easement. The Zoning Board and the Planning Board have neither joined MCM and Sheppard in filing this response nor filed their own memoranda.
 Standard of Review
This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69. That statute outlines the standard of review applicable to this appeal, as follows:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 45-24-69(d).
This Court's review is circumscribed by and deferential to the administrative agency. Restivo v. Lynch, 707 A.2d 663, 667 (R.I. 1998). It cannot substitute its judgment for that of the Zoning Board, but must uphold a decision supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. of Rev., 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in [an] amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and GravelCo., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,388 A.2d 821, 824-25 (R.I. 1978)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Zoning Board's decision. New England Naturist Assoc., Inc. v. George,648 A.2d 370, 371 (R.I. 1994).
 Procedural Requirements The Public Information Meeting
The appellants argue that the Zoning Board's approval of the special use permit is unlawful because the Planning Board did not comply with proper procedure. Initially, the appellants argue that the Planning Board did not properly notify them of the October 18, 2000 public information meeting because the notice led them to believe that the purpose of the meeting was to consider a site plan review, pursuant to Article IX of the Ordinance, rather than a major land development review.[4] They claim that they were unaware of both the work session on November 1, 2000, at which the Planning Board approved the master plan stage, and the November 8, 2000 advisory opinion until January 11, 2001, when they first saw the opinion. The appellants contend, therefore, that they were unable to exercise their appeal rights pursuant to § XVI of the Land Regulations.
MCM and Sheppard respond that the appellants are attempting to "bootstrap" the Planning Board's approval of the master plan stage with its appeal of the Zoning Board's approval of the special use permit. They contend that the appellants failed to appeal the Planning Board's decision to the Zoning Board in accordance with the Ordinance, despite having knowledge of the Planning Board's decision to approve the master plan.
Under the Town's Zoning Ordinance, the construction of a communications tower is "subject to review as a Major Land Development Plan and is to include a Commercial and Industrial Development Site Review by the Planning Board." Ordinance, art. VI, § 20(C)(1). Sections 45-23-39
through 45-23-43 of the Rhode Island General Laws and Section VI of the Land Regulations govern major land developments. Following pre-application meetings, major land development plan review consists of three stages: 1) master plan review; 2) preliminary plan review; and 3) final plan review. Section 45-23-61 of the Rhode Island General Laws and § XIII(A)(2) of the Land Regulations set forth the necessary procedures when both zoning and planning approval are required, as in the present case. In that instance,
 . . . the applicant shall first obtain an advisory recommendation from the Planning Board, as well as conditional Planning Board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain a conditional special-use permit from the Zoning Board, and then return to the Planning Board for subsequent required approval(s).
Land Regulations § XIII(A)(2). Section 45-23-40(d)(1) of the Rhode Island General Laws and § VI(B)(2)(d) of the Land Regulations require that a public information meeting be held before the planning board decision on the master plan, preceded by proper notice.[5] "When a party appears before a zoning board of review and avails himself of the opportunity to present his position to the board, he thereby waives his right to object to any alleged deficiencies of notice." Zeilstra v.Barrington Zoning Bd. of Rev., 417 A.2d 303, 307 (R.I. 1980) (citations omitted).
In the present case, it is not disputed that the appellants received proper notification of the Planning Board's public information meeting held on October 18, 2000, which appellant Vincent
J. Piccirilli attended. The appellants received the following notice:
 TOWN OF FOSTER PUBLIC NOTICE Notice is hereby given that a Public Information Meeting will be held on Wednesday, October 18, 2000 at 7:00 pm in the Benjamin Eddy Building, South Killingly Road at the request of the Foster Planning Board for the purpose of reviewing an application to erect a Wireless Communications Tower. Owner: Herman Sheppard. Location of Property: Plat 10 Lot 88, corner of Route 6 and Cucumber Hill Road. Request: Special Use Permit. Provisions of Zoning Ordinance under which application is made: Article VI. Copies of Commercial Site Review Plans are available for review in the Foster Town Hall, 181 Howard Hill Road, Foster, RI. Hearing impaired persons requesting an interpreter should contact the Town Clerk's Office 72 hours prior to the meeting at 392-9200.
 By Order of the Foster Planning Board Fred Huse, Secretary
Unlike notice for a public hearing for a major land development, notice for a public information meeting for a major land development does not enumerate a series of requirements. Cf. R.I. Gen. Laws § 45-23-40(d)(2) (prescribing requirements for a public information meeting on major land development) with R.I. Gen. Laws § 45-23-42(b) (prescribing requirements for a public hearing on major land development). The notice of the public information meeting given here by the Planning Board contained enough information to notify the appellants that the Planning Board was convening a meeting on a major land development. See Zeilstra,
417 A.2d at 307 (statutory requirement of due notice satisfied despite general content of letters of notice). While that notice made reference to commercial site review plans being available for review before the meeting, the notice in no way limited the meeting to a site plan review.
Moreover, notice of a "public information meeting" does not exclusively denote a commercial site review. Section VI(B)(2)(d) of the Land Regulations states that a "public information meeting shall be held prior to the Planning Board decision on the master plan . . . ." Commercial site review is only one aspect of the master plan review. Ordinance, art. VI, § 20(C)(1). The minutes of the October 18, 2000 meeting show that the Planning Board voted unanimously to proceed with the master plan stage of the application, subject to the opinion of the Town Solicitor on two questions relating to the special use permit. The Town Solicitor's response refers to the October 18, 2000 meeting as "the public information meeting for master plan of major land development." Tr. at 95. Mr. Piccirilli was present at the public information meeting and availed himself of the opportunity to present his position to the Planning Board. Moreover, the minutes of that meeting indicate that he participated in the discussions, having asked whether the Planning Board would be hiring an independent expert to verify the coverage overlay. The appellants waived their right to object to any alleged deficiencies of notice once Mr. Piccirilli attended and participated in the public information meeting. See Zeilstra, 417 A.2d at 307.
Though the appellants requested that the Town Planner notify them of all meetings pertaining to the proposed construction, there is no statute or Town regulation that requires the Planning Board to notify any individual of any Planning Board meetings, other than a public information hearing or a public hearing. In any event, the minutes of the October 18, 2000 meeting, which Mr. Piccirilli attended, indicate that it was mentioned at that time that the next meeting would be held on November 1, 2000. The appellants were effectively put on notice that the Planning Board's decision with respect to the master plan would be forthcoming after the October 18, 2000 meeting and would be discussed further at the November 1, 2000 work session.
Interestingly, the appellants state in their memorandum that they "relied" on the posting of the agenda for the November 1, 2000 work session, leading them to believe that the Planning Board would be conducting a commercial site review. App.'s Mem. at 10-11. If that indeed is the case, then the appellants had prior notice of the November 1, 2000 work session at which the proposed construction would be discussed. If by that statement they mean something other than this obvious reading, then their after-the-fact reliance on the posting to show that they believed that the purpose of the work session was to conduct a commercial site review is misplaced, inasmuch as this Court has already established that the Planning Board approved the master plan stage at that time and did not simply conduct a commercial site review. Furthermore, there is no statute or ordinance that requires the Planning Board to inform the appellants, or any other abutter of the Property, of its November 8, 2000 advisory opinion to the Zoning Board approving the master plan stage.
Most importantly, the appellants waived any objection that they may have had to the Planning Board's actions by failing to appeal to the Zoning Board. Both the Ordinance and the Land Regulations provide for appeals of Planning Board decisions and actions to the Zoning Board. Section XVI(A)(1) of the Land Regulations provides that appeals on matters of subdivision or land development "must be taken within twenty (20) days of the day the decision was recorded and posted in the Office of the Town Clerk." Article XII of the Ordinance provides that appeals from a decision of the Planning Board "shall be taken within thirty (30) days of the date of the recording of the decision of the officer or agency, or within thirty (30) days of the time when the aggrieved party knew or should have known of the action or decision. . . ." Notwithstanding the inconsistency between these two regulations concerning the time in which an appeal to the Zoning Board must be taken, the appellants at no time appealed any decisions made by the Planning Board at the October 18, 2000 public information meeting, its November 8, 2000 advisory opinion, or any action that the Planning Board took between those two dates. The appellants, therefore, have waived any objections that they could have raised with respect to the procedures that the Planning Board followed and cannot now argue on appeal to this Court that the Zoning Board's decision to grant the special use permit was based on faulty procedures undertaken by the Planning Board.
Moreover, the record demonstrates that the appellants have not presented any additional or different arguments than they would have proffered at the public information meeting of October 18, 2000 or the work session of November 1, 2000 (had they known that the purpose of those meetings was to review and approve the master plan). Appellants, therefore, have not shown that their substantial due process rights were prejudiced by the notice given to them of the October 18, 2000 public information meeting and the actions that the Planning Board took thereafter to hear and approve the master plan stage of the proposed development.
 The Public Hearing
The appellants also argue that the Zoning Board failed to provide a public hearing before the Planning Board's decision on the preliminary plan. They claim that the Zoning Board's statement, within its decision to grant the special use permit, that MCM's application be "returned to the Planning Board for final approval" indicates that the Zoning Board intended to bypass the requirement that the Planning Board hold a public hearing prior to deciding on the preliminary plan. MCM and Sheppard counter that after the Zoning Board granted the special use permit, MCM returned to the Planning Board for hearings on the preliminary and final plans. They argue, therefore, that both the Planning Board and the Zoning Board followed the proper procedures for a major land development.
R.I. Gen. Laws § 45-23-61 provides the procedures where an applicant requires both a special use permit under the local zoning ordinance and approval from the planning board:
 . . . the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain a conditional special-use permit from the zoning board, and then return to the planning board for subsequent required approval(s).
R.I. Gen. Laws § 45-23-41 requires that a public hearing be held prior to the Planning Board's decision on the preliminary plan. As in the case of a public information meeting before the Planning Board's approval of the master plan, proper notice must precede the public hearing.[6]
R.I. Gen. Laws § 45-23-41(d).
In the present case, the Planning Board approved the master plan stage for the proposed communications tower and related structures subsequent to the public information meeting it held on October 18, 2001. The Planning Board then sent its recommendation to the Zoning Board to approve the special use permit that MCM had requested. This recommendation also required MCM to return to the Planning Board for approval of both the preliminary and final plan stages after the Zoning Board granted the conditional special use permit. Tr. at 14. It is undisputed that the Zoning Board provided the appellants adequate notice of the January 17, 2001 public hearing on the special use permit. The appellants were present at this meeting and the Zoning Board gave them the opportunity to be heard at that time. The Zoning Board voted to approve the permit and return the application ". . . to the Planning Board for the commercial site plan review." Tr. at 105. There is no statutory or ordinance requirement that the Zoning Board hold a public hearing prior to approval of any stage of a major land development; § 45-23-41 requires that a public hearing be held before the Planning Board prior to its decision on the preliminary plan stage. On April 4, 2001, MCM went back to the Planning Board for a public hearing on both the preliminary and final plans. The appellants attended this public hearing. On May 2, 2001, the Planning Board voted to approve both the preliminary and final plans. This process is in accordance with R.I. Gen. Laws § 45-23-61 and § XIII(A)(2) of the Land Regulations and did not violate statutory or ordinance provisions or constitute unlawful procedure.
The record demonstrates that both the Planning Board and the Zoning Board followed the proper procedures for a major land development where a special use permit is required. The appellants have not shown, therefore, that the Zoning Board prejudiced their substantial due process rights.
 Easement
In their complaint, the appellants next aver that the proposed location of the communications tower blocks an easement over the Property granted to them by Sheppard. The appellants reiterate that claim, without supporting argument, in their memorandum to this Court. MCM and Sheppard make no counterargument in their memorandum.
An easement is an interest in land that typically regulates the use of the land to which it is attached. Roland F. Chase, Rhode Island ZoningHandbook § 9 (citing Lett v. Caromile, 510 A.2d 958, 961 (R.I. 1986)). "[A]n easement is not a form of zoning and the administrative agencies empowered to deal with zoning matters have no jurisdiction to determine the nature or extent of claimed easements." Id. The extent of any ownership interest of a party owning land and a party claiming an easement over that land are properly adjudicated in a court of equity.Lett, 510 A.2d at 961.
The record of the Zoning Board hearing in the present case shows that the appellants attempted to admit into evidence the deed granting them the easement. Tr. at 92-94. At the hearing, appellant Vincent J. Piccirilli stated that the deed granted "an undefined easement," which he further described as "a floating easement, wherever I want to look." Tr. at 93. MCM objected to the Board admitting the deed into evidence because it merely "purport[ed] to be a deed" and "was not certified by the Town Clerk's office or the Registry of Deed [sic]." Tr. at 92. Though the Zoning Board put the deed into the record, it found that the easement was "a legality between [the appellants] and Mr. Sheppard." Tr. at 93.
Under Lett, it is not within the jurisdiction of the Zoning Board to determine the nature or extent of this claimed easement. Accordingly, appellants' claim that the Zoning Board erred in granting the special use permit to MCM because the proposed construction would violate their easement must be rejected.
 Building Coverage
The appellants next argue that the Zoning Board acted in excess of its authority to grant the special use permit because MCM's proposed building coverage on the Property exceeds 6,000 square feet, in violation of § 13(C) of the Ordinance.[7] They contend that the entire area within the 50' x 70' fence that will surround the tower and equipment shelters constitutes a single, self-contained structural unit such that the square footage of that entire enclosed area should be included when determining whether the proposed development comports with the maximum building coverage under § 13(C). The appellants propose that the building coverage includes the diner (2,276 square feet), the modified convenience store (1,506 square feet), the residence (1,088 square feet), and the fenced-in facility area (3,500 square feet) — all of which together exceed the maximum building coverage of 6,000 square feet.
MCM and Sheppard respond that the appellants' interpretation of the maximum building coverage provision of the Ordinance "defies common sense and the plain and ordinary meaning" of the Ordinance. They counter that MCM sought a "special use" permit for the construction of a tower and equipment shelters and not for a fence, for which no permit is required. They further argue that the proposed fence is neither a "building" nor a "structure" in the context of "maximum building coverage." Any contrary interpretation, they maintain, would complicate the future calculation of building coverage.[8]
The Ordinance defines "building" as "[a]ny structure intended for supporting or sheltering any use or occupancy." Ordinance, art. II. "It defines "structure" as "[a]nything constructed which requires location on or attachment to the ground; includes, buildings, does not include paving and planting." Id. It defines "building envelope" as "[t]he three dimensional space within which a structure is permitted to be built on a lot and which is defined by regulations governing building setbacks, maximum height, and bulk; by other regulations; and/or any combination thereof." Id.
In interpreting these provisions of the Ordinance, this Court is guided by settled precepts of statutory construction. The Rhode Island Supreme Court recognizes that the general rules of statutory construction apply equally to the interpretation of an ordinance. Mongony v. Bevilacqua,432 A.2d 661, 663 (R.I. 1981). In construing the language of Article II of the Ordinance, this Court must heed the maxim expressio unius estexclusio alterius, that is, the mention of one is exclusion of another.Sutherland Stat. Const. § 47:23 (6th ed.).
In the present case, though the fence may be considered a "structure," the proposed 50' x 70' fenced-in area is not a structure under the Ordinance. See Patrick J. Rohan, Zoning and Land Use Controls, § 53.02[3] (1978) (defining "fence" as a "structure . . . used to . . . enclose a specific area"). The area within the fence itself has not been "constructed," nor does it require "location on or attachment to the ground"; indeed, after construction of the tower and its accompanying equipment shelters, the area will be, as it always has been, the ground itself. By definition, the fenced-in area also is not a "building" because it is not a "structure."
The appellants' argument that the area within the fence is a "structure" because the fence itself is a "structure" is without merit. Assuming, arguendo, that the fence is a "structure," it does not necessarily follow that what it surrounds is also a structure. At best, under the Ordinance, the area is a "building envelope" — a three dimensional space within which a structure or building may be constructed. Ordinance, art. II. The "three dimensional space" is 50' x 70' x 150' with the last dimension being the proposed height of the tower. The fenced-in area is the "space within which a structure is permitted to be built." Id. The tower and equipment shelters, including the concrete pads, will comprise a transmission facility to be built within this space according to the provisions of all zoning regulations.
The Ordinance clearly provides that the "maximum building coverage" for any permitted use in a highway/commercial district is 25% of the property, or 6,000 square feet, whichever is smaller. Ordinance, art. IV, § 13(C) (emphasis added). A "building" is the only defined term used to describe the coverage to be measured; § 13(C) of the Ordinance does not mention "structure" coverage or "building envelope" coverage. Because the Ordinance defines "building," and that term alone describes the maximum coverage to be measured, its meaning should not be construed to include a "building envelope." Applying a liberal construct to the meaning of "building" in this context would create absurd results. Large tracts of land, fenced-in to mark boundaries between two estates, for example, then could be considered "buildings" under this loose interpretation.[9]
Accordingly, the Zoning Board's finding that the subject building coverage was not in excess of 6,000 square feet of the Property is supported by the reliable, probative, and substantial evidence of record. Its decision to grant the special use permit, therefore, was not in violation of the provisions of the Ordinance.
 The Special Use Permit
The appellants claim generally that the Zoning Board's decision to grant the special use permit is erroneous in light of the reliable, probative, and substantial evidence of record. Without further comment in their memorandum, they also claim that the Zoning Board abused its discretion and that its decision is arbitrary and capricious. MCM and Sheppard respond that the appellants' claims are "unattested" and not worthy of consideration. They argue that the appellants have made mere assertions about the impropriety of the proposed development without offering any sworn testimony. It is their contention that the appellants did not provide any competent evidence to support their allegations.
Rhode Island law requires that zoning ordinances provide for the issuance of special use permits that local zoning boards of review first must approve. R.I. Gen. Laws § 45-24-42. The power of a zoning board to grant a special use permit is limited by the provisions of the local zoning ordinance. Dean v. Zoning Bd. of Warwick, 390 A.2d 382 (R.I. 1978). The rules and standards governing the exercise of a board's authority to grant a special use permit are conditions precedent that must be satisfied before the zoning board is authorized to grant the permit. Guiberson v. Roman Catholic Bishop, 308 A.2d 503 (1973).
In this case, the Ordinance regulates the siting of communications towers and antennae and requires a special use permit for such construction in a highway/commercial zone. Ordinance, art. VI, § 20. The Ordinance further provides the standards for granting such permits:
 In granting a special use permit, the Zoning Board of Review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1. that the special use is specifically authorized by this Ordinance;
 2. that the special use meets all of the criteria set forth in the sections of this Ordinance authorizing such special use; and,
 3. that the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town.
Id., art. VII, § 2(B).
To obtain a special use permit, the applicant has the burden of presenting competent evidence to establish entitlement to relief under the conditions of the ordinance. Toohey v. Kilday, 415 A.2d 732 (R.I. 1980). Where the conditions and requirements for a special use permit as set forth in a zoning ordinance are satisfied, it is an abuse of discretion for a zoning board to deny the requested relief. Salve Regina v. ZoningBd. of Rev. of Newport, 594 A.2d 878 (R.I. 1991). Lay witness testimony from abutting property owners opposed to the granting of a special use permit because of concerns about traffic or diminution of their property values lacks probative force. Salve Regina, 594 A.2d at 881-82 (holding that the zoning board's denial of the requested special use permit was an abuse of discretion because it did not hear expert testimony or other evidence adverse to the applicant); Toohey, 415 A.2d at 737 (restating the Court's longstanding holding that lay judgments of neighboring property owners on the effect of a proposed use on property values and traffic conditions have no probative force with respect to an application for a special exception).
In the instant case, MCM presented three witnesses, all of whom testified that the proposed construction met all of the requirements of the Ordinance. Mr. Sweeney, an expert real estate appraiser, testified that "the proposal is consistent with the uses in the area," "there will be no negative impact upon the surrounding properties," and "it is not going to alter the character of the neighborhood or the general property in the area." Tr. of January 17, 2001 Hearing at 51-52. Mr. Sperry, a landscape architect, testified that the Ordinance specifically authorized the special use requested and that the proposal "exceed[ed]" the "criteria set forth in the sections of the ordinance authorizing the special use." Tr. at 38-39. Mr. Sperry further testified that the proposal would not impair the intent or the purposes of the Comprehensive Plan. Tr. at 39-40.
In response, the appellants did not present any competent evidence to contradict the proffered testimony. Essentially, the appellants testified, as lay persons, that the special use would be "inappropriate." Tr. at 89.
Accordingly, the Zoning Board had reliable, probative, and substantial evidence before it that the application comported with the intent and purposes of the Ordinance and the Comprehensive Plan. In deciding to grant the special use permit, therefore, the Zoning Board neither acted arbitrarily or capriciously nor abused its discretion.
 Conclusion
After review of the entire record, this Court finds that the decision of the Zoning Board to grant MCM's application for a special use permit is supported by the reliable, probative, and substantial evidence contained in the record and is not in excess of the Zoning Board's statutory authority or in violation of the provisions of any statute or ordinance. The substantial rights of the appellants have not been prejudiced by the decision. Accordingly, the Zoning Board's decision is affirmed.
[1] The original application requested both a special use permit and a variance. MCM later amended the application to request only a special use permit. The Zoning Board's subsequent approval was based on the application as amended.
[2] The Zoning Board approved the application with the following restrictions: 1) the maximum building coverage would be 6,000 square feet and the proposed demolition would be completed before the tower was erected; 2) MCM would establish an escrow account for the Town for the cost of removing any communications equipment and for restoring the site in accordance with the zoning ordinance; and 3) the application would be returned to the Planning Board for final approval.
[3] On April 4, 2001, after the appellants filed their appeal, the Planning Board held a public hearing on the preliminary plan and final plan. The appellants attended this public hearing. On May 2, 2001, the Planning Board voted to approve the preliminary and final plan stages of the proposed development.
[4] The Ordinance requires that "[e]very applicant for . . . a special use permit under this Ordinance and for all commercial and industrial development under the Foster Subdivision Regulations must submit a site plan for review." Article IX, § 1. It states that the "purpose of the site plan review process is to ensure that the Zoning Board of Review has before it sufficient information to determine whether a . . . special use permit will promote the health, safety and general welfare of the community and will conform to the intent and requirements of this Ordinance." Id. When no Zoning Board action is required on a proposed commercial site plan, unlike as in the present case, the Ordinance does not require the Planning Board to schedule a public hearing. See id.
(requiring a public hearing and notice thereof for any action on commercial site plans not requiring Zoning Board action).
[5] R.I. Gen. Laws § 45-23-40(d) provides, in pertinent part, as follows:
 (2) Public notice for the informational meeting is required and must be given at least seven (7) days prior to the date of the meeting in a newspaper of general circulation within the municipality. Postcard notice must be mailed to the applicant and to all property owners within the notice area, as specified by local regulations.
 (3) At the public informational meeting the applicant will present the proposed development project. The planning board must allow oral and written comments from the general public. All public comments are to be made part of the public record of the project application.
The provisions of § VI(B)(2)(d) of the Land Regulations are nearly identical to these statutory provisions.
[6] R.I. Gen. Laws § 45-23-42(b) provides:
Public notice of the hearing shall be given at least fourteen (14) days prior to the date of the hearing in a newspaper of general circulation within the municipality following the municipality's usual and customary practices for this kind of advertising. Notice shall be sent to the applicant and to each owner within the notice area, by certified mail, return receipt requested, of the time and place of the hearing not less than ten (10) days prior to the date of the hearing. The notice shall also include the street address of the subject property, or if no street address is available, the distance from the nearest existing intersection in tenths (1/10's) of a mile. Local regulations may require a supplemental notice that an application for development approval is under consideration be posted at the location in question. The posting is for informational purposes only and does not constitute required notice of a public hearing.
Similarly, § VI(D)(1) of the Land Regulations provides:
Public notice of the hearing shall be given at least fourteen (14) days to the date of the hearing in a newspaper of general circulation in the Town according to regular practice. The applicant shall receive a copy of the notice from the Administrative Officer. Notice will be sent by the applicant, upon forms to be provided by the [T]own, to each owner of property within the notice areas as specified in this Section.
Notice shall be mailed, by certified mail, not less than ten (10) days prior to the date of the hearing. A copy of all return receipts shall be provided to the Administrative Officer by the applicant prior to or at the time of the public hearing.
All mail and newspaper notice shall specify: (1) the date, time and place of public hearing; (2) the assessor's plat and lot number of the property; (3) the road address of the property, if road address is not available, the name of the road(s) in which or near which the property is located and the distance and direction from the nearest existing road intersection in tenths of a mile; (4) advise interested parties where and when a copy of plans of the proposed subdivision or major land development project may be examined; and (5) contain a statement that the proposed major subdivision or major land development project may be revised by the Planning Board as a result of further study or because of the views expressed at the public hearing.
[7] The Ordinance provides dimensional regulations for highway/commercial districts. Ordinance, art. IV, § 13(C). The maximum building coverage for any permitted use is 25% of the property, or 6,000 square feet, whichever is smaller. Id.
[8] Specifically, MCM and Sheppard contend that finding that a fenced-in area is a building or structure for the purpose of determining maximum building coverage: 1) would result in restrained use of property; 2) would create confusion and inflate property values because square footage would be based on the fence that surrounds a dwelling rather than the actual dwelling alone; and 3) would not account for calculating the square footage of areas only partially enclosed by a fence or fences that are in disrepair.
[9] The Town Planner asked the Town Solicitor whether the fenced-in area constituted a single, self-contained structural unit. The Town Solicitor responded that no authority existed for the appellants' position and that the Planning Board "should reject this strained and tortured interpretation of the Ordinance." Tr. at 97.